## CITY OF RANGER v. HAGAMAN.
(No. 417.)

Court of Civil Appeals of Texas. Eastland.
March 9, 1928.

Rehearing Denied April 6, 1928.

**1. Deeds ⬤➡112(1)—Deed, referring to engineer's report for description, conveyed only property described therein.**

Where conveyance of waterworks property to city referred to certain engineering company's report for description of properties conveyed, grantor was bound only by matters of description in report, and a recital therein of engineer's assumption that title to certain property would become vested in city on certain contingency constituted no part of such description.

**2. Waters and water courses ⬤➡183(3)—City held charged with knowledge that waterworks property conveyed to it did not include interest in pipe line as such.**

Where contract referred to in conveyance of waterworks property to city for description of such property clearly showed that right to use certain pipe line designated in the report as an "equity" did not, and could not, include any title to, or ownership of interest in, the physical property, city was charged with knowledge that such item did not include interest in pipe line as such, regardless of whether city's representatives were ever told by any one what the item was intended to include.

**3. Contracts ⬤➡170(1)—Contracting parties' stipulation as to meaning of word employed prevails over its ordinary and usual meaning.**

When contracting parties stipulate what meaning shall be given to a word employed in expressing their agreement, such meaning must prevail even over the ordinary and usual meaning of the word.

**4. Waters and water courses ⬤➡183(3)—Grantor of water works property held not liable for breach of warranty of title merely because he lacked title or interest in pipe line designated in conveyance as an "equity."**

Where engineering company's report and a contract referred to in conveyance of water-

works property to city for further description of property conveyed clearly showed that item designated as an "equity" did not include any title to, or ownership of interest in, certain pipe line as such, but only to value of right to use it, held that grantor was not liable for breach of warranty of title merely on showing that he had no title to, or ownership of any interest in, the pipe line.

**5. Evidence ⬤➡460(2)—Unless conveyance identifies property conveyed, parol evidence is admissible to make identification.**

Unless a conveyance itself identifies the subject-matter conveyed, parol evidence is admissible to make the identification.

**6. Evidence ⬤➡460(2)—Conveyance of "equity" in pipe line held not to identify subject-matter, and parol evidence was admissible.**

Where conveyance of waterworks properties to city included an item called an "equity" in a pipe line, subject-matter of such item was not identified, and parol evidence was admissible to make the identification.

**7. Interest ⬤➡39(1)—Action against city to recover amount due for water held one on contract, not on account, and interest was allowable from dates when sums became payable (Rev. St. 1925, art. 5070).**

Action against city for amount due for water sold to it under contracts held one on contract for amount due, and not on open account, though items going to make up the aggregate were stated in form of an account and verified; hence, under Rev. St. 1925, art. 5070, interest was allowable from time when sums became due and payable.

Error from District Court, Eastland County; Geo. L. Davenport, Judge.

Action by M. H. Hagaman against the City of Ranger. Judgment for plaintiff, and defendant brings error. Affirmed.

Conner & McRae, of Eastland, and L. H. Flewellen, of Ranger, for plaintiff in error.

Chastain & Judkins, of Eastland, and L. R. Pearson, of Ranger, for defendant in error.

FUNDERBURK, J. M. H. Hagaman sued the city of Ranger for the sum of $5,758.68, the amount claimed to be due under the terms of certain contracts for water sold by him to said city. The right of plaintiff to recover said sum was unquestioned, unless the defendant had the right to offset it by a claim of damages, in a like sum or more, for breach of a warranty of title to a certain item in a list of property conveyed by Hagaman to the city, described by reference to a report of Elrod Engineering Company, as follows:

"Equity in T. & P. R. R. Co. 8" C. I. line between pumping plant and T. & P. standpipe is. difference between an 8" and 6" line.

"Difference in cost between laying an 8" and 6" line is $0.53 per ft.

"13,260' at $0.53, $7,027.80.

"Present value 96 per cent., $6,746.69."

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The real nature of the item designated an "equity" is sufficiently shown by evidence to be as follows: By contract dated April 2, 1919, between the Director General of Railroads, and who will hereinafter be designated as T. & P., and M. H. Hagaman, the latter was given an option to take over the operation of a certain pumping plant and to use a certain pipe line, exclusively owned by the T. & P., in supplying water to others besides the railroad. By the same contract the T. & P., at its sole cost, became obligated to install the pipe line from Hagaman's reservoir to the railroad tanks in Ranger, shown by the evidence to be about 13,260 feet. The size of the pipe was not specified. The term of the contract was ten years from its date, with provision for the Director General retiring at the termination of the government control of railroads, the remainder of the term to be regarded as a new contract between Hagaman and any party taking over the operation of the railroad. The contract gave the T. & P. the unqualified right, at the termination of the contract, to remove the pipe line. The T. & P. laid about half of the pipe line with 8-inch pipe, and "strung" 6-inch pipe for the other half. Before laying the 6-inch, Hagaman made a deal with the railroad company to take the 6-inch pipe and for the railroad to finish laying the pipe line with all 8-inch casing; Hagaman paying the difference in the cost of laying same over the cost of laying 6-inch casing as intended. It was this difference in cost that was designated by the Elrod Engineering Company as an "equity," and was appraised (excluding depreciation) at $6,746.69. The evidence justifies us in concluding that Hagaman never at any time claimed or represented that he had any interest (in the sense of title or ownership) in the pipe line. By way of defining what was meant by the item called "equity," the report in which the term was used said:

"This equity represents the difference in estimated replacement costs between the line as built and a six-inch line which the railroad company proposed to build. Evidence of this equity is to be had in a contract existing between the T. & P. Railway Company and the Ranger Waterworks. We are assuming that title will become legally vested in the city of Ranger in the event of the purchase of the properties herein appraised."

The contract thus referred to is that of date April 2, 1919, mentioned above.

[1, 2] The "Report of Proposed Improvements to the Properties of the Ranger Waterworks," dated November 20, 1923, to which reference was made for description of the properties conveyed by Hagaman to the city of Ranger, was only binding upon Hagaman as to the matters of description. We regard the statement in the report that "we are assuming that title will become legally vested in the city of Ranger in the event of the purchase of the properties herein appraised" as

constituting no part of such description. The description in the report of the item called an "equity" does not show that it consisted of any title to, or ownership of, the pipe line or any interest therein. The contract referred to for further description clearly shows that such "equity" did not, and could not, include any title to, or ownership of, an interest in the physical property. The city of Ranger, we think, was charged with knowledge that the item described as an "equity" did not include any interest in the pipe line as such, and this regardless of whether the representatives of the city were ever told by any one what the item was intended to include.

[3, 4] As we view the matter, it is wholly immaterial whether the word "equity" is properly descriptive of the subject-matter of the conveyance. Citation of authority is not needed to support the proposition that, when contracting parties stipulate what meaning shall be given to a word employed in expressing their agreement, such meaning must prevail, even over the ordinary and usual meaning. The description in the engineer's report and in the contract it referred to for further description makes it certain that the word was not used in any such sense as that contended for by the city. This is as far as the inquiry need go. If it meant anything other than an interest in the pipe line, it is not important what that was, so far as this suit is concerned. In such case there can be no liability for a breach of warranty of title simply upon a showing that Hagaman had no title to, or ownership of, any interest in the pipe line.

We would be hard put to name with a simple word the subject-matter of the item in question. It was not an easement, for an easement pertains only to land. It was not a license, for that is personal, and usually revokable. It was added value that was given to an existing right to use the pipe line of the railroad company for a term of ten years to supply water to the city of Ranger or others besides the railroad company, by making the whole of the line an 8-inch line instead of about half of it an eight-inch line and the remainder a 6-inch line. This added value of the use of the pipe line is what was appraised at $6,746.69 at the time the city took over the waterworks' properties, and was first called an "equity" by the engineering firm that was employed by the city to make the appraisement.

[5, 6] If it is not certain from the words themselves that the word was used in this sense, still no violence is done to any principle of law by the introduction of parol evidence to show the real subject-matter of the item thus designated as an "equity." Unless a conveyance itself identifies the subject-matter conveyed, parol evidence is admissible to make the identification. This does no violence to the well-known rule that parol evidence, except under certain circumstances, is

not admissible to contradict or vary the terms of a written instrument. The conveyance of something called an equity in a pipe line certainly does not identify the subject-matter. When for description reference is made to a contract that shows that the owner of the so-called equity has no right, title, or interest in the pipe line, and claims none, but does have an option to make a use of same that may be valuable, the term can only be construed to apply to such right of user.

The alternative contention of the city that, if there was not a total failure of the consideration for the item in question, and consequent total breach of the warranty of title to same, then that there was a partial failure of consideration and partial breach to the extent of about 6,000 feet of the 13,260 feet of pipe line is predicated upon the same claim that the equity conveyed was an interest in the physical property.

The conclusions we have reached and as set out above likewise dispose of this contention.

[7] The further point made that the court erred in any event in giving judgment for interest from September 1, 1926, to the date of the judgment instead of from the 1st day of January succeeding the accrual of the several amounts going to make up the aggregate sum claimed would be correct if the suit were simply one upon an open account, but it is more than that. In fact, in no proper sense is it a suit upon open account at all. True, the different items going to make up the aggregate are stated in the form of an account, and same is verified. The suit is nevertheless one upon a contract for the amount due for water, in which contract the times of payment for the water are plainly stipulated.

The case is clearly within the terms of R. S. 1925, art. 5070, which provides interest shall be allowed upon all written contracts ascertaining the sum payable from and after the time when the sum is due and payable.

There appears to us to be no error in the judgment of the trial court, and the same is therefore affirmed.