**Thomas R. HART, Appellant,**

v.

**TRADERS AND GENERAL INSURANCE COMPANY, Appellee.**

No. 17348.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 10, 1972.

Rehearing Denied Dec. 8, 1972.

Banner & McIntosh, and Ed McIntosh, Wichita Falls, for appellant.

Fillmore, Lambert, Farabee & Purtle, and Larry Lambert, Wichita Falls, for appellee.

## OPINION

BREWSTER, Justice.

The plaintiff, Thomas R. Hart, here sued defendant, Traders and General Insurance Company, seeking to recover on one of its automobile insurance policies that defendant had issued to the plaintiff's brother, Cecil Hart. Plaintiff contended that he was an insured upon the occasion in question and was entitled to recover under the uninsured motorist coverage provided for in the policy for bodily injuries that he sustained when injured in a collision between an uninsured automobile and his brother's parked car on which he was working at the time.

The trial judge sustained the insurance company's motion for summary judgment, decreeing that plaintiff take nothing by his suit, and the plaintiff has appealed.

The insurance policy involved covered the period from March 23, 1969, to March 23, 1970. The plaintiff's brother, Cecil Hart, was the named insured. On July 19, 1969, Cecil Hart was driving his 1964 Mercury automobile that was covered by the policy when it became disabled on the highway between Olney and Archer City. He sent word into town for his brother, the plaintiff, to come and help him fix the car. The plaintiff did go to aid his brother and they decided that the fuel pump was the cause of the trouble. Cecil Hart, the car owner, got under the car and installed a new fuel pump, but from his position he was unable to connect one of the gas lines to the fuel pump. The hood of the car was raised. It appeared that the plaintiff, working from above, would be better able to connect the gas line. He was handed a wrench to work with and was lying with his weight upon the fender of the car, not remembering for sure whether his feet were in touch with the ground, when the car he was lying on and working on was struck by an uninsured automobile causing injury to plaintiff.

Since the collision he has located a car that was the same make and model as the one he was working on. By actual experiment he has found that when he placed his body in the position it was in at the time of the wreck that almost his entire weight

was being supported by the fender of the car. Plaintiff was 5′8″ tall and could not comfortably lean across the fender and reach down into the area where the fuel pump was located and use both hands to connect the gas line to the pump without placing the weight of his upper body and trunk upon the fender of the car. Although it was possible for his feet to touch the ground from the position he was in when hurt, the majority of his weight was, while in this position, supported by the car fender.

Cecil Hart's affidavit stated that plaintiff, when injured, was lying on the fender of the insured car with his head and a large part of his body extending down into the area around the motor. He does not think that plaintiff's feet were touching the ground.

Affidavits on file in connection with the motion for summary judgment showed the above facts.

The provisions of the policy that are material are hereafter set out with the supplied emphasis our own.

"TRADERS & GENERAL INSURANCE COMPANY Agrees with the insured . . .

"PART IV—FAMILY PROTECTION COVERAGE

"COVERAGE J FAMILY PROTECTION (DAMAGES FOR BODILY INJURY) To pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the . . . use of such uninsured automobile; . . . .

"DEFINITIONS . . . under Part IV: 'insured' means: (a) the named insured . . . (b) *any other person while occupying an insured automobile;* . . .

" 'insured automobile' means: (a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded . . . .

" 'occupying' means in or *upon* or entering into or alighting from."

The controlling question in the case is: Was the plaintiff at the time he was hurt "upon" the insured automobile within the meaning of the policy provisions?

If he was "upon" the insured car when struck and hurt by the uninsured automobile, he was "occupying" the insured car within the meaning of the provisions of said policy and was an "insured" and was covered by the provisions of Part IV of the policy that are above set out. If plaintiff was not "upon" the insured car at the time, the trial court correctly sustained the motion for summary judgment.

No one contends in this case that the plaintiff, when hurt, was in or alighting from or entering into the insured car.

We are convinced that the trial court erred in sustaining defendant's motion for summary judgment.

Regardless of what definition or meaning the word *"occupying"* might otherwise have, the parties to the insurance contract involved here expressly agreed that as used in the policy in question the word "occupying" meant one who was in or *upon* or entering into or alighting from an insured automobile.

■ Parties to a contract have a right to stipulate what meaning shall be given a particular word or phrase that they use in their contract, and where they do agree that a word or phrase used in their contract shall be given a certain meaning, then that meaning must prevail even over the ordinary and usual meaning of the word. City of Ranger v. Hagaman, 4 S.W.2d 597 (Eastland, Tex.Civ.App., 1928, no writ. hist.).

And in Williams v. J. & C. Royalty Co., 254 S.W.2d 178 (San Antonio, Tex.Civ. App., 1952, error ref.) the court said at p. 180: "When contracting parties set forth

their own definitions of the terms they employ, the courts are not at liberty to disregard such definitions and substitute other word meanings therefor."

And for additional cases holding the same way see Langford v. Nevin, 117 Tex. 130, 298 S.W. 536 (Tex.Com.App., 1927) and cases therein cited, and Reliable Life Insurance Company v. Steptoe, 435 S.W.2d 630 (Tyler, Tex.Civ.App., 1968, no writ hist.).

■ So because the parties agreed by contract that the word "occupying" as used therein meant in or upon or entering into or alighting therefrom, we are restricted to giving the word that meaning in construing the contract.

We are now confronted with determining the meaning of "upon" as used in the contract so that we can determine whether or not plaintiff was "upon" an insured automobile at the time he was hurt.

The parties to the insurance contract did not attempt to define in the policy the particular meaning or sense in which they used the word "upon" as they did in the case of "occupying," "insured," and "insured automobile."

■ This being true this court in construing the policy must give to the word "upon" as used in the insurance policy its ordinary, popular and commonly accepted meaning. Reliable Life Insurance Company v. Steptoe, supra, and Pan American Insurance Co. v. Cooper Butane Co., 157 Tex. 102, 300 S.W.2d 651 (1957).

The following is from the opinion in the case of Christoffer v. Hartford Accident & Indemnity Co., 123 Cal.App.2d Supp. 979, 267 P.2d 887 (1954) at p. 890:

"The word 'upon' is defined in part by Webster's New International Dictionary, Second Edition, Unabridged, 1948, as follows:

" 'Upon—on:—in all its senses see on.'

"And turning to the word 'on', one finds the following definition:

" 'On—The primary signification of on is position of contact with or against a supporting surface, or motion into or toward such position.

" '1. Indicating position over and in contact with that which supports from beneath; as, the book lies on the table; * * * to swear (with hands) on the Bible; to ride on a train . . . .

" '2. Indicating contiguity or independence: (a) Contact and support from elsewhere than beneath; as, a fly on the ceiling; hanging on the wall. (b) Contiguity or juxtaposition; as, a town situated on the river; to live on Walnut Street (where British usage often has in); * * *.' "

Webster's New International Dictionary (1926) defines "upon" as meaning "On" in all of its senses.

As to "on" it says: "The general signification of on is situation, motion, or condition with respect to contact or support beneath; as: 1. Over and in contact with; at the surface of, and supported by; upon; as, the book lies on the table, . . . ."

■ When these definitions of "upon" are considered, they being the usual and ordinary meaning of the word, it is apparent to us that the plaintiff was "upon" the fender of an "insured automobile" at the time he was injured and was thus "upon" said automobile. Almost all, if not all, of his entire body weight rested upon said automobile at the time it was struck by the uninsured car.

No Texas case that we know of has been decided on this exact point. However A.L.R. Annotations on related questions to the one involved here appear at 39 A.L.R. 2d 952 and 42 A.L.R.3d 501. The first annotation referred to is entitled "Scope of clause of insurance policy covering injuries sustained while 'in or on' or 'in or upon' motor vehicle", and the other annotation is entitled "When Is A Person 'Occupying'

An Automobile Within Meaning Of Medical Payments Provision".

We are convinced that the holdings in many of the cases cited in those annotations are authority for our holding here.

■ When the ordinary every-day meaning of upon is given to that word there is no ambiguity in its meaning. See Christoffer v. Hartford Accident and Indemnity Company, supra.

In his argument before this Court counsel for the Insurance Company took the position that plaintiff would not even have been "upon" the insured car within the meaning of the policy provisions if he had been sitting upon the hood when struck by the uninsured car.

■ We believe that such a construction of the policy involved would be an unreasonable one because the policy language in no way limits or restricts the meaning of the word "upon" as used in the policy. It seems clear to us that if a person was upon the top of the car hood or if he was upon the top of the car that he would be "upon" the car within the ordinary, usual and every-day meaning of the word upon.

In the case of Lokos v. New Amsterdam Casualty Co., 197 Misc. 40, 93 N.Y.S.2d 825 (1949) a similar question was involved and as to the meaning of the word "upon" the court said at page 826 the following: "Can it be said that the insurer attached to the word 'upon' a meaning so narrow as to encompass only such cases in which the entire weight of a person's body was resting upon or supported by the vehicle? Considering the usual position of a person in relation to a car in use and the fact that other enumerated risks include acts of being upon the automobile in the sense of resting upon or being supported by it, it is reasonable to give the term a broader meaning including some acts in which a person is in contact with the car."

The following is from McAbee v. Nationwide Mutual Insurance Company, 249 S.C. 96, 152 S.E.2d 731, 732 (1967): ". . . by the weight of authority actual physical contact with the insured's automobile is sufficient to establish that the insured was *upon* the vehicle as contemplated by such policies. . . .

"The basic reasoning of the cases which support the above general principles appears to us to be sound. These cases point out that the word 'upon' is included in a clause which refers to other positions in relation to the vehicle, that is, 'in', 'entering' or 'alighting from.' They correctly reason that the terms are not synonymous, and the use of the word 'upon' was clearly intended to cover a class of persons and situations not necessarily included in the other terms used.

"While no attempt is here made to prescribe the exact limits of coverage provided in all cases by the present policy provision, we do not think that the meaning of the word 'upon' is restricted to 'on top of,' as when the weight of a person's body is resting upon or supported by the vehicle. As stated in Wolf v. American Casualty Co. of Reading, Pa., 2 Ill.App.2d 124, 118 N.E.2d 777, 'it cannot mean that the insured, to be within the meaning of the clause, had to be couched on the roof of the car or on the running board or sitting on the hood. It must connote some physical relationship between himself and the car that enlarged the area defined by the words "entering or alighting" and the word "in".'

"One of the common and ordinary meanings of the word 'upon' is that of 'contact with.' Webster's Third New International Dictionary. Since the policy contains no restrictions as to how or in what manner the insured was to be upon the vehicle, we think it reasonable to conclude that the parties contemplated a construction of the word that would include actual physical contact with the vehicle the insured was using."

The cases cited in the A.L.R. Annotations show that by the clear weight of authority

the cases that have involved a construction of an insurance policy clause providing coverage when a person is in or upon or entering or alighting from a car hold that such clauses should be given a broad and liberal construction and hold that actual physical contact with the car is sufficient to sustain a recovery for a person as being "upon" such car within the meaning of such policies. See Henderson v. Hawkeye-Security Insurance Company, 252 Iowa 97, 106 N.W.2d 86 (1960); Goodwin v. Lumbermens Mut. Cas. Co., 199 Md. 121, 85 A.2d 759 (1952); Sherman v. New York Casualty Co., 78 R.I. 393, 82 A.2d 839 (1951); McAbee v. National Mutual Ins. Co., supra; 42 A.L.R.3d 506, Note 1; and Hendricks v. American Employers Insurance Co., 176 So.2d 827 (La.App., 1965, writ ref. in 248 La. 415, 179 So.2d 15).

Here it is not even necessary for us to hold that mere contact with the insured car is sufficient in order to sustain a recovery for a person as being "upon" such car within the meaning of the policy. In this case there was far more than mere physical contact between plaintiff and the insured car. At the time he was hurt practically the entire weight of the plaintiff's body was being supported from beneath by the insured car while the plaintiff was lying "upon" the fender of such car and thus while he was in that manner "upon" the insured car.

The defendant relies upon the case of Pennsylvania National Mutual Cas. Ins. Co. v. Bristow, 207 Va. 381, 150 S.E.2d 125 (1966). There a car operated by two older persons became disabled and was by the side of the road. Bristow was passing in his car and stopped to aid them. He raised the hood, was standing in front of the car in the middle between the headlights and then leaned over the motor and reached with his hands to check some of the wiring. His legs were touching the bumper and his stomach could have been touching the car. While in this position this disabled car was struck in the rear by an uninsured motorist, causing Bristow to be, after the wreck, draped over the engine and to be hurt. The policy language there was the same as is the policy language here and that court held that Bristow was not "upon" the car within the meaning of the uninsured motorist provisions of the policy.

After reading the cases in the A.L.R. articles referred to above, we are convinced that the Virginia case will represent the minority view on the points involved.

The distinctions between the facts of that case and the one here are obvious. In the Bristow case the plaintiff's knees and possibly his stomach were only touching the insured car. In the case before us the plaintiff was actually lying upon the fender of the insured car when hurt with practically all of his body weight being supported by that car.

In the book entitled, "A Guide to Uninsured Motorist Coverage", by Alan I. Widiss, Professor of Law at the University of Iowa, the author has the following to say about this Virginia case:

"§ 2.11 Occupying

"The endorsement defines 'occupying' to mean 'in or upon or entering into or alighting from' the automobile. The scope afforded by this definition seems quite broad, but there have been several decisions which seem to raise questions. For example, in a Virginia case, recovery was denied when injuries were sustained by a good samaritan who was injured by an uninsured motorist who struck the rear of an insured automobile while the good samaritan was leaning over the stalled engine. The court concluded that the claimant was not 'in or upon' the vehicle, in the sense of occupying it when the accident occurred, and therefore could not qualify as an insured under the owner's policy. The construction of the term 'in or upon' in this case seems questionable. However, the result of this particular case may not actually have been as unreasonable as it seems on initial consideration, since the litigation

was between the samaritan's insurance company (which had provided coverage to him as a pedestrian) and the company insuring the owner of the stalled car over which the company was primarily liable. In the event the good samaritan had not been covered by his own policy, it would have more vividly demonstrated the potential unreasonableness of a definition which would allow an insurer to avoid liability under such circumstances."

We hold that under the facts of the case before us that the plaintiff was, when hurt, "upon" the insured automobile and was therefore "occupying" it and an "insured" within the meaning of the policy provisions involved.

The case is reversed and remanded.