# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00150-CV

**Old American County Mutual Fire Insurance Company/Zeferino Sanchez, Appellants**

**v.**

**Zeferino Sanchez/Old American County Mutual Fire Insurance Company, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. 99-13220, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

Old American County Mutual Fire Insurance Company ("Old American") sought a declaratory judgment against Zeferino Sanchez that Old American was not obligated to pay for injuries Sanchez received in an accident. Sanchez filed a counterclaim to receive payment from Old American. Old American moved for summary judgment, which the trial court granted. Sanchez appeals the grant of summary judgment and Old American cross-appeals contending that summary judgment was proper. We will modify the trial court's summary judgment order and affirm the judgment as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 1999, Sanchez was injured when an uninsured motorist struck a truck owned by Sanchez but not listed as a covered vehicle on his automobile insurance policy. At the time

of the accident, Sanchez was underneath the truck working on the gas tank hose. The truck collapsed on Sanchez, severing his spinal cord.

Sanchez sought to recover uninsured/underinsured motorist coverage ("UM") and personal injury protection coverage ("PIP") from Old American. Sanchez's insurance policy with Old American listed two vehicles but did not list the truck Sanchez was working under when injured. Sanchez's wife purchased the policy, but it listed Sanchez as the only "named insured." The policy explicitly waived coverage for PIP and UM and charges were never assessed for these items. Furthermore, both the PIP and UM provisions deny coverage for injuries sustained while "occupying" or when struck by any vehicle owned by the insured that is not listed in the policy. Old American claims Sanchez was "occupying" his truck at the time of the accident. The trial court granted summary judgment on this ground.

Old American also sought summary judgment on the grounds that Sanchez was struck by his unlisted vehicle and that Sanchez had waived his rights to recover because his wife, an insured under the policy, rejected PIP and UM in writing on the insurance application for Sanchez. Sanchez claims that the waiver was not effective because his wife had purchased and signed the policy instead of him, and his wife was not the "named insured." The trial court denied this ground. Sanchez also claims that he was not struck by his vehicle for purposes of the insurance exception because his vehicle was not the striking force responsible for the accident. The trial court did not rule on this ground.

Sanchez now appeals the summary judgment order, and Old American cross-appeals, claiming that summary judgment also should have been granted on the grounds of waiver and that

Sanchez was struck by an unlisted vehicle owned by Sanchez. Neither party disputes the facts and thus we are only presented with questions of law.

## STANDARD OF REVIEW

To affirm a summary judgment ruling, we must find that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When a trial court grants summary judgment on a specific ground, an appellate court should consider all summary judgment grounds the trial court rules on and that are preserved for review that are necessary for a final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625-26 (Tex. 1996). Consequently, we must find that none of Old American's asserted grounds ruled on by the trial court merit summary judgment to reverse the lower court's ruling.

## DISCUSSION

### *The Meaning of "Occupying" in PIP and UM Clauses*

In his only issue, Sanchez claims that the trial court erred in its determination that Sanchez was "occupying" the unlisted truck at the time of the accident. The question to be decided is whether lying underneath a vehicle while in contact with its gas hose is a manner of occupying it.

If Sanchez was occupying his truck at the time of the accident, his claim would be barred because of the owned-vehicle exclusion[1] in his insurance policy.[2] The number of cases and

---

[1] Some jurisdictions have found owned-vehicle exclusions to violate the public policy behind UM coverage because their statutes are designed to extend UM coverage. *See* Jacqueline G. Slifkin, Annotation, *Automobile Insurance: What Constitutes "Occupying" Under Owned-Vehicle Exclusion of Uninsured- or Underinsured-Motorist Coverage of Automobile Insurance Policy*, 59 A.L.R. 5th 191, 198-99 (2001). Other jurisdictions have upheld these exclusions because they "encourage

different holdings on similar fact patterns suggest that the word "occupying" in this context is ambiguous. *See, e.g., Horace Mann Ins. Co. v. Neuville*, 465 N.W.2d 432, 434 (Minn. Ct. App. 1991) (holding that man standing in front of disabled vehicle waiting for assistance was occupying); *Mackie v. Unigard Ins. Co.*, 752 P.2d 1266, 1269 (Or. Ct. App. 1988) (concluding that woman removing gift from trunk of her car was occupying); *Mid-Century Ins. Co. v. Henault*, 905 P.2d 379, 383 (Wash. 1995) (concluding that woman hit by car while lying in roadway after being ejected from her motorcycle was not occupying motorcycle); *General Accident Ins. Co. of Am. v. D'Allesandro*, 671 A.2d 1233, 1235 (R.I. 1996) (using four-prong test to determine that woman sitting in police cruiser watching her car being towed was not occupying her car). Courts have adopted different tests to determine if a person is occupying a car, ranging from determining if the insured's weight is supported by the car to judging the geographic proximity of the claimant to the car. *See, e.g., Wagenman v. State Farm Ins. Co.*, 726 F. Supp. 1239, 1245 (D. Utah 1989); *Hart v. Traders & Gen. Ins. Co.*, 487 S.W.2d 415 (Tex. Civ. App.—Fort Worth 1972, writ ref'd n.r.e.). As a general rule, courts are more likely to find that the plaintiff is occupying the vehicle if such a finding establishes coverage for the insured than they are if the finding would strip the injured party of coverage. Jacqueline G. Slifkin, Annotation, *Automobile Insurance: What Constitutes "Occupying" Under*

---

motor-vehicle owners to secure insurance on all of their vehicles." *Id* at 197.

**2** The insurance policy states, "We do not provide Personal Injury Protection Coverage for any person for bodily injury sustained . . .[w]hile *occupying*, or when struck by, any motor vehicle (other than *your covered auto*) which is owned by you." It also says, "We do not provide Uninsured/Underinsured Motorists Coverage for any person: 1. For bodily injury sustained while *occupying*, or when struck by, any motor vehicle or trailer of any type owned by you or any *family member* which is not insured for this coverage under this policy."

*Owned-Vehicle Exclusion of Uninsured- or Underinsured-Motorist Coverage of Automobile Insurance Policy*, 59 A.L.R.5th 191,198 (2001).

Under the terms of Sanchez's insurance policy, occupying is defined as "in, upon, getting in, on, out or off." Because Sanchez was neither entering nor exiting the truck, and was not inside or on the truck, he will only be barred from recovery under his policy's exemption if he is found to be "upon" the vehicle. "Upon" is not defined in the policy.

The general rules of contract construction govern the interpretation of insurance policies. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). A contract is unambiguous if it can be given a definite or certain legal meaning. *Id*. However, if the contract is subject to more than one reasonable interpretation, the contract is ambiguous and it will be interpreted in favor of coverage for the insured. *Id*. Terms in contracts are to be given their plain, ordinary meaning unless the contract shows that particular definitions are used to replace ordinary meaning. *Western Reserve Life Ins. v. Meadows,* 261 S.W.2d 554, 557 (Tex. 1953). Since "upon" is not defined in the insurance policy, we need to determine whether there is any ambiguity in its meaning to see which standard applies.

Some courts have specifically stated that the insurance policy in question ambiguously defines occupying. *See, e.g.*, *Michigan Mut. Ins. Co. v. Combs*, 446 N.E.2d 1001, 1007 (Ind. Ct. App. 1983); *Westerfield v. La Fleur*, 493 So. 2d 600, 601 (La. 1986)*; Genther v. Progressive Cas. Ins. Co.*, 681 A.2d 479, 480 (Me. 1996). However, all of these cases involve parties trying to claim insurance because they are occupying a *covered* vehicle. Unlike Sanchez, the parties in the above cases had paid for insurance for the car involved in the accident and sought the full benefit of their insurance policies. Sanchez had never paid for insurance on the truck that collapsed on him. Consequently, even if

Sanchez had been clearly occupying his truck, *e.g.*, sitting inside his truck or immediately exiting the truck, he would not be covered because of the owned-vehicle exclusion in his policy. The courts in *Combs*, *Genther*, and *Westerfield* used the ambiguity of the term "occupying" to broaden the definition so claimants would be allowed to recover for injuries sustained while neither supported by, nor entering or exiting, the covered vehicle. Here, to broaden the term occupying to cover "lying underneath the truck," as Old American urges, would violate the long-standing principle that ambiguous terms in insurance policies should be interpreted against the insurance company. *Grain Dealers*, 943 S.W.2d at 458.

Even if the term "occupying" is not ambiguous, the ordinary meaning of "upon" supports Sanchez's claim that he was not occupying the vehicle. The main Texas case dealing with this issue is *Hart v. Traders & General Insurance Co.*, which held that the insured party was occupying the car while resting on the car's fender. 487 S.W.2d at 418-19. The court in *Hart* assumed that the policy was unambiguous and interpreted "upon" based on its definition in the dictionary. *Id.* at 418. "Upon" is defined as "on" or "on the surface." *Webster's Third New International Dictionary* 2517-18 (1986). "On" is defined as being in "position over or in contact with that which supports from beneath," or to indicate "contiguity and dependence with" such as a "fly on the wall." *Id.* at 1574. "On" is also defined as "in or into the position of being in contact with the upper surface of something or of being supported from beneath by the upper surface," as in "plates on a table." *Id.* at 1575. These definitions suggest that one needs to be supported by an object to be deemed "on" the object. In contrast, Sanchez was lying on his back holding onto a hose attached to his truck; he was not supported by or dependent on the truck. Sanchez was *on the ground*, not on the truck.

6

Old American emphasizes *Hart's* statement that being in contact with the vehicle is enough to establish occupancy and *Hart's* definition of "upon" that a fly on the wall is "upon" the wall. *Hart*, 487 S.W.2d at 418. However, the court in *Hart* used the fly on the wall example in the same manner as *Webster's Dictionary's* definition of "on." *Webster's* emphasizes that the fly is "contiguous and *dependent*" with the wall, not merely in contact with the wall. *Webster's Dictionary* at 1575 (emphasis added). Sanchez was dependent on the ground, not dependent on the truck. Furthermore, the "fly on the wall" phrase in *Hart* is dictum as the majority of the plaintiff's weight was being supported by the car. *Hart*, 487 S.W.2d at 416-17. The court so noted:

> Here it is not even necessary for us to hold that mere contact with the insured car is sufficient in order to sustain a recovery for a person being "upon" such car within the meaning of the policy. In this case there was far more than mere physical contact between plaintiff and the insured car. At the time he was hurt practically the entire weight of the plaintiff's body was being supported from beneath by the insured car . . . .

*Id.* at 420.

The entire weight of Sanchez's body was being supported from beneath by the ground, not by his truck. In addition, Old American's reliance on *Hart* is misplaced because there the court defined occupying so as to provide coverage for the injured party, not to *deny* coverage. The plain meaning of "upon" was enough to support the insured's claim. However, *Hart* implies that these policies should be interpreted against the insurance company, suggesting there might be ambiguity as to the meaning of "occupying." At the end of *Hart*, the court distinguishes its opinion from *Pennsylvania National Mutual Casualty Insurance Co. v. Bristow*, 150 S.E.2d 125 (Va. 1966), where it was held that a man leaning over the engine while touching the bumper with his legs was not

7

occupying the vehicle. *Id* at 420. Noting that *Bristow* is different because the plaintiff's weight was not supported by the car, the *Hart* court further distinguishes the opinion by observing that *Bristow* dealt with one insurance company suing another insurance company, and the ruling did not bar the insured from recovering for his injuries. *Id.* at 420-21.

As with *Genther* and *Combs*, *Hart* dealt with the question of coverage for an insured while occupying a listed vehicle. The injured party in *Hart* was in contact with a vehicle that was covered under an insurance policy. By expanding the definition of "upon" to include mere contact, the court allowed the insured to obtain the full benefit of his insurance policy. Sanchez's claim is different because he is trying to extend the coverage on his *other vehicles* to cover injuries sustained in an accident involving his uninsured truck. The policy arguments for finding Sanchez was not occupying his truck when injured are weaker than the policy arguments for finding the plaintiff in *Hart* was occupying the car when injured because Sanchez did not pay for any insurance on his truck.

Nevertheless, we conclude that we cannot broaden the term "upon" to include touching a vehicle from underneath while resting on the ground beneath the vehicle. We are not at liberty to interpret an ambiguous term against the insured, regardless of whether the insured listed the vehicle involved in the accident on his policy. Old American added the owned-vehicle exclusion to protect itself from paying for injuries involving the use of an unlisted vehicle. Since Old American drafted the policy, it could have provided definition of "upon" to clear up any ambiguity.

Because Old American failed to demonstrate as a matter of law that the policy terms governing the exclusion of PIP and UM were unambiguous, or that the term "upon" is synonymous with "beneath," we hold that the trial court erred in granting summary judgment on the ground that Sanchez was occupying an unlisted vehicle at the time of the accident. We sustain Sanchez's issue.

8

*Waiver of PIP and UM*

Old American raises two issues in this appeal. Old American's second issue is that summary judgment should have been granted on the ground that Sanchez waived coverage for PIP and UM in his insurance policy. Sanchez, however, claims that the waiver was not valid because it was made by his wife instead of Sanchez, who is the "named insured" in the policy.

Article 5.06-1(1) of the Texas Insurance Code states that all automobile insurance policies should provide UM coverage except "where *any insured named* in the policy shall reject the coverage in writing."[3] Tex. Ins. Code Ann. art. 5.06-1(1) (West 1981) (emphasis added). Article 5.06-3 deals with PIP clauses and states that "[t]he coverage required by this article shall not be applicable if any *insured named* in the policy shall reject the coverage in writing . . . ."*Id* art. 5.06-3 (emphasis added).[4] Sanchez argues that only he could reject PIP and UM because he is the only "named insured"

---

[3] Art. 5.06-1(1) of the Texas Insurance Code states:

"No automobile liability insurance (including insurance issued pursuant to an Assigned Risk Plan established under authority of Section 35 of the Texas Motor Vehicle Safety-Responsibility Act), covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemented thereto, in at least the limits described in the Texas Motor Vehicle Safety-Responsibility Act, under provisions prescribed by the Board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom. The coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage in writing; provided that unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer."

Tex. Ins. Code Ann. art. 5.06-1 (West 1981).

[4] Texas Insurance Code Art. 5.06-3(a) states:

9

in the policy and that "insured named" means "named insured." The trial court refused to grant summary judgment on the ground of waiver.

Here we are asked to decide whether a spouse who is the applicant for an auto insurance policy but is not the "named insured" can waive PIP and UM for the "named insured." This specific issue has never been decided in Texas. To make this determination, we must decide if the spouse of the "named insured" is considered to be "any insured named" for the purposes of the PIP and UM sections of the Texas Insurance Code. In construing a statute, we give effect to the Legislature's intent. *Continental Casualty Insurance. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000). We consider the plain and common meaning of the statute's words and examine the entire statute, not only the disputed sections. *Id.* "Each provision must be construed in the context of the entire statute of which it is a part." *Id.* The wording of articles 5.01-1(1) and 5.06-3 shows that the Legislature intended for PIP and UM coverage to apply in automobile insurance policies unless specifically rejected in writing.

To uphold the Legislature's intent of providing broad PIP and UM coverage, Texas courts have interpreted insurance policies dealing with PIP and UM in favor of the insured. In *Ortiz*

---

"No automobile liability insurance policy, including insurance issued pursuant to an assigned risk plan established under authority of Section 35 of the Texas Motor Vehicle Safety-Responsibility Act, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless personal injury protection coverage is provided therein or supplemental thereto. The coverage required by this article shall not be applicable if any insured named in the policy shall reject the coverage in writing; provided, unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy if the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer."

Tex. Ins. Code Ann. art. 5.06-3 (West 1981).

10

*v. State Farm Mut. Auto. Ins. Co.*, the Fourth Court of Appeals stated that the purpose of PIP and UM is to protect conscientious drivers from irresponsible parties and, because of the importance of PIP and UM, the statutes should be liberally construed by courts. 955 S.W.2d 353, 356-57 (Tex. App.—San Antonio 1997, writ denied); *see also Stracener v. United Serv. Auto Ass'n,* 777 S.W.2d 378, 382 (Tex. 1989) (stating that UM article should be liberally construed). For this reason, courts have held that rejection of PIP and UM must be express and clear. *Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 308 (Tex. 1978). "Because the provision of such mandated coverage is a matter of public policy, a claim of rejection thereof should not be determined simply by reference to the rules which courts otherwise apply to determine the intent and acts of contracting parties." *Id.* Consequently, rejection of PIP and UM must be expressly made in writing, and articles 5.06-1 and 5.06-3 should be interpreted in favor of finding coverage to protect innocent parties.

Sanchez does not claim that the form of rejection was inadequate, so we will confine our inquiry to whether or not a rejection of PIP and UM by the spouse of the named insured is valid. Generally, for the purpose of insurance policies, the spouse of the named insured is treated the same as the named insured. The definitions in Sanchez's policy specifically state that "you" and "your" in the policy refer to *both* the named insured and the spouse of the named insured if the spouse and the named insured live in the same household.[5]

Sanchez does not dispute that his wife had the right to purchase the policy and list him as the named insured, so it follows that she could also waive PIP and UM on his behalf. In addition, the Sanchezes did not pay for PIP or UM coverage. As Old American argues, disallowing Mrs.

---

[5] It is undisputed that the Sanchezes live in the same household.

Sanchez's waiver would allow a spouse to sign up for an insurance policy, list the other spouse as the named insured, and expressly waive PIP and UM, with the result that the named insured could then recover PIP and UM benefits without paying for the coverage. This would obviously contravene the Legislature's intent to allow written waivers of PIP and UM. The Sanchezes were treated the same under the policy and should have the same rights to waive PIP and UM coverage.

Moreover, when filling out the insurance application, Mrs. Sanchez did not request to have the policy list her husband as the only "named insured." Both spouses are listed as co-applicants, and the application includes each spouse's respective driving and employment information. The only document signed by Mrs. Sanchez was the application; she never signed anything listing Mr. Sanchez as the only "named insured" or expressing an intent to not herself be listed as a "named insured" in the policy. It is clear from the application that she intended to take out a policy in both their names, and the fact that the insurance company entered Mr. Sanchez as the only "named insured" should not invalidate her waiver.

By holding that she could effectively waive PIP and UM, we are in line with similar holdings in other states. Interpreting a UM statute similar to our own, the Florida Supreme Court held that, based on agency principles, the spouse of the listed named insured can waive UM, reasoning that if the wife had the authority to apply for the insurance policy, she had the authority to waive PIP and UM. *Acquesta v. Indus. Fire & Cas. Co.*, 467 So. 2d 284, 285 (Fla. 1985). In *Bonnette v. Robles*, a Louisiana court held that a woman applying for coverage who listed her husband as the named insured and selected a lower level of UM coverage had effectively waived the higher level of UM coverage for both herself and her husband. 740 So. 2d 261 (La. Ct. App. 1999).

Because we conclude that the waiver was valid, we sustain Old American's second issue and affirm the trial court's summary judgment on the ground of waiver. Since we are affirming on a different ground than the one given by the trial court in granting summary judgment, we are modifying the summary judgment order.

### *The Meaning of "Struck" in PIP and UM Clauses*

Old American's first issue in its cross-appeal is that the trial court erred when it refused to grant summary judgment on the ground that Sanchez was struck by a vehicle owned by him that was not covered under his insurance policy. Because we have already concluded that Sanchez waived PIP and UM coverage, we do not address this issue. *See* Tex. R. App. P. 47.1.

## CONCLUSION

We affirm the summary judgment but modify the ground on which it was granted and hold that Sanchez effectively waived coverage under PIP and UM.

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Modified and, as Modified, Affirmed

Filed: November 15, 2001

Publish