EMPLOYERS CASUALTY COMPANY et al., Appellants,

v.

Max W. SLOAN, Individually and as next friend of Cathy Sloan, a minor, Appellees.

No. 12721.

Court of Civil Appeals of Texas, Austin.

April 26, 1978.

Rehearing Denied May 17, 1978.

J. A. Kever, Kever & Ratliff, San Angelo, for Employers Cas. Co.

John H. Hofmann, Smith, Davis, Rose, Finley & Hofmann, San Angelo, for Southern Farm Bureau Cas. Ins. Co.

Tom Webb, Max Parker, Webb, Stokes & Sparks, San Angelo, for appellees.

PHILLIPS, Chief Justice.

Appellants, Employers Casualty Company[1] and Southern Farm Bureau Casualty Insurance Company,[2] appeal from the judgment rendered in favor of appellee, Max W. Sloan, individually and as next friend of Cathy Sloan, a minor.

The judgment is reformed, and as reformed, the judgment is affirmed.

---

1. Hereinafter referred to as "Employers."

2. Hereinafter referred to as "Southern."

Appellee, as plaintiff below, brought this suit to recover damages individually and on behalf of Cathy Sloan who was injured in an automobile accident on June 22, 1973. At the time of the accident, she was a passenger in an automobile belonging to Howe F. Mayse that collided with an automobile owned and operated by Terry Lee Burchers, an uninsured motorist. The negligence of Burchers was the proximate cause of the accident.

Prior to June 19, 1972, Mayse had individual insurance policies on his automobiles and pickups. Some of these individual policies provided for uninsured motorist coverage and some did not. There was a written rejection of coverage on all these policies that did not provide for uninsured motorist coverage; however, there was uninsured motorist coverage on the individual policy issued by Southern covering the 1970 Oldsmobile automobile involved in the accident.

On June 19, 1972, all of the individual policies were canceled and the "First Fleet Policy" was issued to Mayse by Southern. This fleet policy did not contain a written endorsement for uninsured motorist coverage, and the policy declaration page did not show a charge for or an indication of coverage for uninsured motorist insurance. Mayse signed the application attached to the policy that listed all of his automobiles and types of coverage. Other than the application, Mayse did not execute a written rejection of uninsured motorist coverage. The 1970 Oldsmobile involved in the accident was one of the vehicles insured by the "First Fleet Policy." Mayse *orally* rejected uninsured motorist coverage in connection with this insurance policy.

On the date of the accident, June 22, 1973, Mayse had a "Second Fleet Policy" issued by Southern in force and effect. This policy did not contain a written endorsement for uninsured motorist coverage, and the policy declaration page did not show a charge for or an indication of coverage for uninsured motorist insurance. The "Second Fleet Policy" was a renewal of the "First Fleet Policy." The 1970 Oldsmobile

involved in the accident was one of the vehicles insured by the "Second Fleet Policy." Mayse did not make a written or oral request for or written rejection of uninsured motorist coverage on this policy. At the time Mayse received both fleet policies, he was aware of the fact that such policies did not specifically provide for uninsured motorist coverage.

On the date of the accident, Max W. Sloan, father of Cathy Sloan, had an automobile liability insurance policy with Employers that provided for uninsured motorist coverage. Cathy Sloan was a minor child living in the home of her father at the time of the accident.

Both the Southern policy and the Employers policy in force and effect at the time of the accident had "other insurance" provisions. Each policy provided that, in the event there was other insurance, the policy would only apply as excess insurance over any other similar insurance available to the insured.

This case was originally tried before a jury and the verdict of the jury was returned. A new trial was granted and all parties agreed that the court could assess damages upon the previous testimony heard in the trial of the case before the jury. Based on article 5.06–1, Tex.Ins.Code Ann., and Rule 10[3] of the State Board of Insurance, the court found that there was uninsured motorist coverage afforded Mayse and passengers in his vehicle under the Southern policy in effect at the time of the collision because there was no rejection of uninsured motorist coverage in *writing* by Mayse. The court also found that Southern and Employers were jointly and severally liable to Cathy Sloan for the amount of her injuries. Accordingly, the court rendered judgment in favor of appellee, as next friend of Cathy Sloan, for $15,000.00 against Southern and Employers, jointly and severally.

Southern is before this Court on three points of error. It contends: (1) the trial court erred in rendering judgment for

---

**3.** Now Rule 18.

Mayse because the judgment was based on uninsured motorist coverage that had been orally rejected by Mayse; (2) the trial court erred in basing its judgment on Rule 10 because the State Insurance Board does not have the authority to promulgate a rule that requires rejection of uninsured motorist coverage to be in writing; (3) the trial court erred in rendering judgment for Mayse because the judgment was based on uninsured motorist coverage that did not exist because Mayse waived the written rejection requirement set forth in Rule 10 of the State Board of Insurance Regulations.

Employers agrees with the trial court that rejection in writing of uninsured motorist coverage is required but challenges the judgment by two points. It contends: (1) the trial court erred in holding that, as between the companies, each was equally liable to Mayse because the policies provide otherwise; (2) the trial court erred in ruling that the two companies were jointly and severally liable to Mayse for $15,000.00 since the policy limits for each company is specified in the policy at $10,000.00.

## I.

■ We cannot agree with Southern's contention that uninsured motorist coverage was effectively rejected. In our opinion, the trial court was correct in holding that uninsured motorist coverage existed unless rejected in writing by an insured.

Article 5.06–1, Uninsured or Underinsured Motorist Coverage, Tex.Ins.Code Ann. (Supp.1978), provides in part:

"(1) The coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage; provided that unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

Rule 10 of the Texas Automobile Casualty Manual drafted by the State Board of Insurance provided:

"Protection Against Uninsured Motorist Coverage shall be afforded under any automobile liability policy, including a policy obtained through the Texas Automobile Plan, insuring the owner of a motor vehicle registered or principally garaged in the State of Texas, *except that the insured shall have the right to reject in writing such coverage. . . ."* (Emphasis added)

■ By the enactment of article 5.06–1, the Legislature declared it to be the public policy of this state to make uninsured motorist coverage a part of every liability insurance policy issued, with certain limited exceptions. In furtherance of the Legislature's declared policy, it has been held that article 5.06–1 should be interpreted liberally to give effect to the public policy declared therein, *Francis v. International Service Ins. Co.,* 533 S.W.2d 408 (Tex.Civ.App. Texarkana 1976, aff'd, 546 S.W.2d 57 (Tex.)), and, as a corollary, "words providing an exception to the general rule of article 5.06–1 should be strictly construed." *Guarantee Ins. Co. of Texas v. Boggs,* 527 S.W.2d 265 (Tex.Civ.App. Amarillo 1975, writ dism'd).

Appellant Southern argues that a comparison of the language in article 5.06–1(1) (Uninsured Motorist Coverage), and article 5.06–3(a) (Personal Injury Protection Coverage), indicates the legislative intent that uninsured motorist coverage may be effectively rejected orally. Article 5.06–3(a) specifically sets out that coverage shall be provided unless the insured named in the policy rejects the coverage in writing.

One answer to Southern's argument is that article 5.06–1 was enacted in 1967 and Rule 10 requiring written rejection of uninsured motorist coverage was adopted by the Insurance Board in 1968. The Legislature enacted article 5.06–3 in 1973. Therefore, article 5.06–1 was not amended to require a written rejection since Rule 10 satisfied that requirement.

Southern cites a federal case[4] and case authority from other jurisdictions[5] for the proposition that under the statutory context of article 5.06–1(1), an oral rejection of uninsured motorist coverage is sufficient and a written rejection is not required.

Conceding *arguendo* that it has been held, in decisions involving statutes silent on the manner of rejection, that a rejection of uninsured motorist coverage may be effective even if not reduced to writing, see 55 A.L.R.3d 216 (1974), the problem with Southern's position is that in those cases, unlike the situation here, rejection in writing was not required by a rule or regulation of the respective agency regulating insurance. Here, Rule 10, issued by the State Board of Insurance, provided simply that each policy of public liability insurance issued would automatically provide uninsured motorist coverage unless such protection was rejected in writing.

■ Appellant Southern also contends the State Board of Insurance exceeded its authority in adopting Rule 10 in that it limited rejection of uninsured motorist coverage to written rejection. Thus, the question we must decide is whether Rule 10 was properly issued.

A review of the applicable statutes, legislative intent and the public policy served thereby, demonstrates to this Court that the Board was authorized to promulgate Rule 10 and require a written rejection of uninsured motorist coverage.

Article 5.10, Tex.Ins.Code Ann. (1963), provides that the Insurance Board is authorized to make and enforce rules and regulations "not inconsistent with the provisions of this subchapter as are necessary to carry out its provisions . . ." In the exercise of such authority "the Board may not act contrary to but only consistent with, and in furtherance of, the expressed statutory purposes." *American Liberty Ins. Co.*

*v. Ranzau*, 481 S.W.2d 793 (Tex.1972). In construing a statute, this Court "should ascertain and be guided by the Legislature's intention." *Carp v. Texas State Board of Examiners of Optometry*, 401 S.W.2d 639 (Tex.Civ.App. Dallas 1966, rev'd on other grounds, 412 S.W.2d 307 (Tex.)).

The intent of the Legislature and the purpose of article 5.06–1 are manifested upon analysis of the statute. Article 5.06–1 was passed ". . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . ." The emergency clause of the Act that added article 5.06–1 to the Insurance Code provides:

"Sec. 3. The fact that the people of Texas are constantly exposed to financial loss caused by negligent financially irresponsible motorists, and the further fact that it is the intent and purpose of this Act to provide a means of protecting the conscientious and thoughtful motorist against such loss, thereby benefiting all the citizens of this state, constitutes an emergency . . ." Texas Laws 1967, Chapter 202, Section 3, at 449.

■ The objective of the Legislature in passing the uninsured motorist statute was to provide financial protection for motorists damaged by tort-feasors who are unable to pay for the damage inflicted, see *Francis v. International Service Ins. Co., supra*, and, as previously stated, because of the remedial purpose of uninsured motorist coverage, the words providing an exception to the general rule of article 5.06–1 should be strictly construed to protect the insured. See *Guarantee Ins. Co. of Texas v. Boggs, supra.*

In *Gerst v. Oak Cliff Savings and Loan Association*, 432 S.W.2d 702 (Tex.1968), the Supreme Court stated that the determining factor in deciding the question of whether or not a particular administrative agency

---

4. *Lamb v. Midwest Mutual Ins. Co.*, 296 F.Supp. 131 (W.D.Ark.1969), aff'd, 421 F.2d 179 (8th Cir. 1970).

5. *Lichtenberger v. American Motorists Ins. Co.*, 7 N.C.App. 269, 172 S.E.2d 284 (1970); *Abate*

*v. Pioneer Mutual Casualty Co.*, 22 Ohio St.2d 161, 258 N.E.2d 429 (1970); *Southeast Title and Ins. Co. v. Thompson*, 231 So.2d 201 (Fla.1970); *Aldcroft v. Fidelity and Casualty Co.*, 106 R.I. 311, 259 A.2d 408 (1969).

has exceeded its rule-making powers is that the rule's provisions must be in harmony with the general objectives of the act involved. See also *Kee v. Baber*, 157 Tex. 387, 303 S.W.2d 376 (1957), and this Court's opinion in *Jefco, Inc. v. Lewis*, 520 S.W.2d 915 (Tex.Civ.App. Austin 1975, writ ref'd n. r. e.). The evidence in this record is that the State Board of Insurance did not prescribe any standard wording or form relative to Uninsured Motorist Coverage Rejection. The execution of a satisfactory written rejection would require only a minimum of effort by those rejecting uninsured motorist coverage. To hold that uninsured motorist coverage can be excluded by an oral rejection would do violence to the spirit of the uninsured motorist statute. It would not only invite abuses, but would give rise to litigation, of the kind now before us, concerning the existence of uninsured motorist coverage. This would defeat the manifest public policy that uninsured motorist coverage is to be provided in the absence of a clear and specific rejection knowingly entered into by the insured. We find that Rule 10 of the State Board of Insurance was in harmony with the general objectives of the uninsured motorist statute and, therefore, was properly issued.

■ We also overrule Southern's contention that Mayse waived the written rejection requirement set forth in Rule 10 of the State Board of Insurance Regulations. For the reasons expressed above, we conclude that an oral rejection was ineffective to preclude uninsured motorist coverage.

## II.

Appellant Employers contends that the trial court erred in entering judgment providing that, as between the two insurance companies, each company ". . . was equally liable for Plaintiff's damages." An examination of the judgment demonstrates that it does not provide that the companies are "equally liable" for damages; instead, the judgment provides that the insurance companies are jointly and severally liable to appellee. The point is overruled.

Employers further contends that the trial court erred in holding that Southern and Employers are jointly and severally liable for the total amount of appellee's damages.

As previously stated, the policies in question provided that if the car in which the insured was riding had insurance coverage available to insured, the other policy would constitute only excess coverage. The maximum limit of liability for each company was specified in the policy at $10,000.00.

In *American Liberty Ins. Co. v. Ranzau, supra,* the Supreme Court held that an "other insurance" clause did not limit the recovery of actual damages caused by uninsured motorists and that the "other insurance" or "excess insurance" provision could not prevent the insured from recovering under another policy in an amount equal to the limit provided in her own policy, where actual loss was more than the limit. Accord *American Motorists Ins. Co. v. Briggs,* 514 S.W.2d 233 (Tex.1974), wherein the Court stated:

> "Following this holding [Ranzau], we now hold that the statute [Uninsured Motorist] requires that whenever coverage exists under the uninsured motorist endorsement, the person covered has a cause of action on the policy for his actual damages to the extent of the policy limits without regard to the existence of other insurance. If coverage exists under two or more policies, liability on the policies is joint and several to the extent of plaintiff's actual damages, subject to the qualification that no insurer may be required to pay in excess of its policy limits . . . ."

■ Thus, where multiple coverage exists, if an insured incurs damages in excess of the policy limits caused by the negligence of an uninsured motorist, the insured can recover from either insurance company having coverage. Either company may be held liable to the injured insured for the full amount of damages sustained up to the policy limits. Therefore, we reform the judgment of the trial court to provide recovery by appellee for $15,000 against appellants Southern and Employers. Appel-

lants Southern and Employers are jointly and severally liable to appellee to the policy limits of the respective policies. *American Motorists Ins. Co. v. Briggs, supra.*

The judgment of the trial court is reformed, and as reformed, judgment is affirmed.