**UNIGARD SECURITY INSURANCE COMPANY, Petitioner,**

v.

**Charles SCHAEFER et al., Respondents.**

**No. B–7312.**

Supreme Court of Texas.

July 5, 1978.

Gardere, Porter & Dehay, Gordon H. Rowe, Jr., Dallas, for petitioner.

Kolenovsky & Hulme, Bobby W. Kolenovsky, Moseley & Jones, Craig T. Enoch, Hayden H. Cooper, Dallas, for respondents.

DANIEL, Justice.

This is an action by Charles Schaefer, LaVerne Kennedy, individually and as next friend of Diana Kennedy, and Geraldine

Craddock, individually and as heir at law of Melinda Craddock, to recover benefits under the Personal Injury Protection endorsement of an automobile liability insurance policy issued by Unigard Security Insurance Company to Abraham Wyloge. The case was submitted to the trial court on a stipulated statement of facts. The trial court rendered judgment that the plaintiffs, Schaefer, et al., take nothing by their suit because of an "Exclusion of Named Driver" endorsement. The Court of Civil Appeals reversed and rendered judgment for the plaintiffs. 559 S.W.2d 103. We affirm the judgment of the Court of Civil Appeals.

David Wyloge, the son of Abraham Wyloge, was the driver of a 1970 Javelin automobile which was involved in a violent one-car crash. David Wyloge was killed in the wreck, as was Melinda Craddock, a passenger in the vehicle. Two other passengers, Charles Schaefer and Diana Kennedy, were seriously injured.

Prior to the time of the accident, Abraham Wyloge obtained liability insurance coverage on the Javelin from Unigard. This policy included Endorsement 243, Personal Injury Protection, which was mandated by the Legislature in Article 5.06–3, Tex.Ins.Code Ann.,[1] reading in part as follows:

"Art. 5.06–3. Personal Injury Protection Coverage

"(a) *No automobile liability insurance policy,* including insurance issued pursuant to an assigned risk plan established under authority of Section 35 of the Texas Motor Vehicle Safety-Responsibility Act, covering liability arising out of the ownership, maintenance, or use of any motor vehicle *shall be delivered or issued for delivery in this state unless personal injury protection coverage is provided therein or supplemental thereto. The coverage provided in this article shall be applicable unless the insured named in the policy rejects the coverage in writing,* and the coverage shall be provided in or

supplemental to a renewal policy unless it is rejected in writing by the insured named in the policy.

"(b) 'Personal injury protection' consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy and members of the insured's household, any authorized operator or passenger of the named insured's motor vehicle including a guest occupant, up to an amount of $2,500 for each such person for payment of all reasonable expenses arising from the accident and incurred within three years from the date thereof for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, and in the case of an income producer, payment of benefits for loss of income as the result of the accident, . . . *The personal injury protection in this paragraph specified shall not exceed $2,500 for all benefits, in the aggregate, for each person.*

"(c) *The benefits required by this Act shall be payable without regard to the fault or non-fault of the named insured or the recipient* in causing or contributing to the accident, and without regard to any collateral source of medical, hospital, or wage continuation benefits. *An insurer paying benefits pursuant to this Act shall have no right of subrogation* and no claim against any other person or insurer to recover any such benefits by reason of the alleged fault of such other person in causing or contributing to the accident." (Emphasis added.)

The only exclusion of benefits provided by the Act is in the event the insured causes injury to himself intentionally or is injured while in the commission of a felony or attempting to elude arrest. Article 5.06–3(e).

As authorized by the Act, the State Board of Insurance promulgated a form for such coverage, which is entitled Endorse-

---

1. Effective August 27, 1973. All statutory references herein are to the Texas Insurance Code.

ment 243, the "conditions" section of which reads:

"1. Policy Provisions. *None* of the insuring agreements, *exclusions* or conditions of the policy shall apply to the insurance afforded by this endorsement except the *conditions* 'Premium,' 'Notice,' 'Assistance and Cooperation of the Insured,' 'Changes,' 'Assignment,' 'Cancellation' and 'Declarations.'" (Emphasis added.)

Mr. Wyloge did not reject the statutory Personal Injury Protection coverage. On the contrary the policy was written with the coverage included as set forth in Endorsement 243, and Unigard collected a premium of twenty-five dollars for such coverage.

While this statutory coverage was in full effect, but at a subsequent date, Mr. Wyloge signed a Form 119, "Exclusion of Named Driver" endorsement, which is reproduced in the margin.[2] It excludes claims arising from any accidents occurring while any automobile is being operated by David Wyloge. Unigard asserts that the exclusion in Endorsement 119 was tantamount to a partial rejection (while David was driving) of the Personal Injury Protection required by Article 5.06–3. For this reason it denied plaintiffs' claims for benefits under the statutory coverage.

The plaintiffs counter with arguments that Endorsement 119 does not refer to or comply as a written rejection of the Personal Injury Protection coverage as required by Article 5.06–3; that it is excluded from Article 5.06–3 and Endorsement 243 coverage by the terms of the statute and the endorsement; and that Unigard's interpretation would be in derogation of the statute and contrary to public policy. We are in substantial agreement with the arguments advanced by plaintiffs.

It is correct that the wording of Endorsement 119 "Exclusion of Named Driver" does not mention or refer to the Personal Injury Protection coverage mandated by Article 5.06–3. In fact, the endorsement was promulgated as last revised in 1941, nearly thirty-two years prior to the time when Article 5.06–3 became effective in 1973. As attached to the Wyloge policy, it retained the same wording and revision date of October 20, 1941. Obviously, it was not promulgated as a form for partial or total rejection of the new type of statutorily mandated insurance coverage which must be incorporated in an automobile liability insurance policy unless the insured "rejects the coverage in writing."

Nevertheless, Unigard argues that 119 has the legal effect of a partial rejection of all insurance coverage contained within the policy. This disregards the fact that the basic policy's insuring agreements, exclusions, conditions, and other terms do not

---

2.

## 119. EXCLUSION OF NAMED DRIVER

This endorsement forms a part of Policy No. FT 20748 issued to Abraham M. Wyloge

by the Unigard Security Ins. Co. at Its Agency
(Name of Insurance Company)

located (city and state) Carrollton, Texas, and is effective from 9/25/73
(12:01 A. M. Standard Time)

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

It is agreed that the insurance afforded by this policy shall not apply with respect to any claim arising from accidents which occur while any automobile is being operated by David Wyloge *David Wyloge*

Acknowledged by: Abraham Wyloge *Abraham Wyloge*
(Signature of Named Insured)

By COKER INSURANCE AGENCY
(Duly Authorized Representative)

FORM 119.—EXCLUSION OF NAMED DRIVER
Texas Standard Automobile Endorsement
Revised October 20, 1941.

apply to the Personal Injury Protection required by Article 5.06–3. This is clear from the terms of the statute and the Policy Provisions section of Endorsement 243, quoted above, which specifically provide the "*None* of the insuring agreements, exclusions, or conditions of the policy shall apply to the insurance afforded by this endorsement . . ." e.cept premium, notice and other specified conditions which do not relate to exclusions or written rejection of the coverage.

■ In this regard, the statutory Personal Injury Protection coverage set forth in Endorsement 243 is like a separate policy, or a supplement to the basic policy. Exclusion 119 still applies to accidents and claims under the main provisions of the basic policy such as Bodily Injury Liability, Property Damage Liability, Comprehensive, and Collision. These coverages account for $162 of the $193 total premium paid for the Wyloge policy. They contain a total of twenty exclusions in addition to Endorsement 119. Through the years the validity of 119 has been upheld as to the above named liability coverage of automobile insurance policies. *Western Alliance Insurance Company v. Albarez,* 380 S.W.2d 710 (Tex.Civ.App.1964, writ ref. n. r. e.); *Travelers Indemnity Co. v. Columbus State Bank,* 442 S.W.2d 479 (Tex.Civ.App.1969, no writ). But no case has so held with reference to Personal Injury Protection coverage. Since Endorsement 119 is by its terms an "exclusion," and does not fall within the ambit of any exception in Endorsement 243, we hold that it is an "exclusion" within the language of Endorsement 243 and, therefore, does not apply to the statutory Personal Injury Protection benefits.

Unigard makes two arguments against this interpretation. It says (1) that Endorsement 119 is an "endorsement" instead of an "exclusion," and (2) that it was subsequent in time and therefore controlling over Endorsement 243. We find no merit in either of these contentions. The fact that Endorsement 119 is an "endorsement" does

not change its character as an "exclusion." By whatever name, the operative effect of 119 is that of an exclusion. Neither is the chronology of the endorsements of any importance, since Endorsement 119 by its own terms provides that it "forms a part of the policy . . . effective from its date of issue . . . ." Thus, we treat the exclusion contained· in Endorsement 119 as if it was one of the exclusions written into the basic policy. As indicated, in no event does this exclusion apply to the statutory coverage contained in Endorsement 243.

■ This holding is consistent with that part of Article 5.06–3(e) which sets forth the only exclusion of benefits authorized by the statute. They are: when the insured causes injury to himself intentionally or is injured while in the commission of a felony or attempting to elude arrest. Any attempt to add another exclusion applicable when the automobile is being operated by an unauthorized driver would be repugnant to the statute. When specific exclusions or exceptions to a statute are stated by the Legislature, the intent is usually clear that no others shall apply. *State v. Richards,* 157 Tex. 166, 301 S.W.2d 597 (1957). When the Legislature specifies a particular extent of insurance coverage, any attempt to void or narrow such coverage is improper and ineffective. *Westchester Fire Insurance Company v. Tucker,* 512 S.W.2d 679 (Tex. 1974); *American Liberty Insurance Company v. Ranzau,* 481 S.W.2d 793 (Tex.1972); *American Nat. Ins. Co. v. Tabor,* 111 Tex. 155, 230 S.W. 397 (1921); *Berry v. Dairyland County Mutual Insurance Company of Texas,* 534 S.W.2d 428 (Tex.Civ.App.1976, no writ); *Western Alliance Insurance Co. v. Dennis,* 529 S.W.2d 838 (Tex.Civ.App.1975, no writ).

■ Even if Endorsement 119 were not inapplicable because of the terms of Article 5.06–3 and Endorsement 243, we do not agree with Unigard that 119 was sufficient as a partial rejection of the statutory Personal Injury Protection. As heretofore indicated, there is not a word in that endorse-

ment which mentions Personal Injury Protection, Article 5.06–3 or Endorsement 243. A matter of public policy involving more than the present litigants is here involved. The Legislature has declared it to be the public policy of this State that "no automobile liability insurance policy . . . shall be delivered or issued for delivery . . . unless personal injury protection coverage is provided therein or supplemental thereto." Among the purposes are to provide injured occupants of the insured automobile with up to $2500 per person for hospital and doctor bills arising from accidents "without regard to fault or nonfault of the named insured or recipient . . . ."

■ It is further stated that the coverage provided in this Article shall be applicable "unless the insured named in the policy rejects the coverage in writing . . . ." We believe this calls for an express written rejection in language demonstrating that the insured has some knowledge of what he is rejecting. Because the provision of such mandated coverage is a matter of public policy, a claim of rejection thereof should not be determined simply by reference to the rules which courts otherwise apply to determine the intent and acts of contracting parties. Rejection of the coverage should not be on a "tantamount," "legal effect," or "consequence" basis. The manifest public policy requires that the "rejection in writing" of this particular statutory coverage be in clear and express language. There was no such rejection in the present case. On the contrary, Unigard sold the coverage and took the premium therefor. Under such circumstances it should pay the benefits as provided in Endorsement 243.

Unigard points out that a decision against partial rejection by indirection (use of Endorsement 119) would be contrary to the holding of a divided Beaumont Court of Civil Appeals (three opinions) in *Greene v. Great American Insurance Company*, 516 S.W.2d 739 (Tex.Civ.App.1974, writ ref. n. r. e.). There it was held that Endorsement 119 was effective as a partial rejection of

Uninsured Motorists Coverage. We have studied the *Greene* case carefully in connection with this case and have concluded that there are enough differences between the the Uninsured Motorists Act, Article 5.06–1, and the Personal Injury Protection, Article 5.06–3, that the two decisions can be distinguished, especially in view of Endorsement 243, applicable to Article 5.06–3 coverage. Yet, we realize that the two coverages are so much alike on the public policy aspects and the need for clear and express rejection of either coverage, if desired, that we disapprove all language in *Greene* which is contrary to our holding in this case.

Accordingly, the judgment of the Court of Civil Appeals is affirmed.