**Helen Elaine SIMS, Appellant,**

v.

**STANDARD FIRE INSURANCE COMPANY, Appellee.**

**No. 01–88–00896–CV.**

Court of Appeals of Texas, Houston (1st Dist.)

Oct. 12, 1989.

Rehearing Denied Nov. 16, 1989.

---

**2.** Appellees non-suited their claim for attorney fees.

Gary L. McConnell, McConnell & Klement, Angleton, for appellant.

Randall D. Wilkins and Nicholas E. Zito, Hennessy & Zito, Houston, for appellee.

Before MIRABAL, SAM BASS and COHEN, JJ.

## OPINION

MIRABAL, Justice.

This is an appeal from a summary judgment.

Appellant, Helen Elaine Sims ("Sims"), brought suit for personal injuries sustained in an automobile accident that occurred on December 17, 1985. Sims sued appellee, Standard Fire Insurance Company ("Standard"), along with other defendants. Sims sought to recover from Standard, uninsured/underinsured motorist benefits and personal injury protection ("P.I.P.") benefits, under a Texas "personal auto policy" issued by Standard to the owner of the automobile in which Sims was a passenger. The problem in this case is that an endorsement to the auto policy specifically excluded P.I.P. and uninsured/underinsured motorist benefits coverage while Kitty Sue Helm, the car owner's sister, operated the vehicle; the injuries sustained by Sims were incurred while Kitty Sue Helm was driving.

Standard filed a motion for summary judgment, and Sims responded by filing her own motion for partial summary judgment. The trial court overruled Sims' motion and granted summary judgment in Standard's favor, ruling that Sims take nothing by her claim against Standard. The summary judgment was severed from the remaining causes of action in the case, and Sims perfected this appeal.

In point of error one, Sims complains the trial court erred in overruling her motion for partial summary judgment. In point of error two, Sims complains the trial court erred in entering summary judgment for Standard.

We affirm.

■ Sims first argues that the "excluded driver" endorsement to the auto insurance policy is ineffectual to exclude uninsured/underinsured motorist coverage and P.I.P. coverage to Sims, as a matter of law. The endorsement is on form 515, a Texas Standard Automobile Endorsement form prescribed June 1, 1981 by the State Board of Insurance. It reads as follows, in relevant part:

515. EXCLUSION OF NAMED DRIV-
ER AND PARTIAL REJECTION OF
COVERAGES.

You agree that none of the insurance
coverages afforded by this policy shall
apply while Kitty Sue Helm (the excluded
driver) is operating your covered auto or
any other motor vehicle. You further
agree that this endorsement will also
serve as a rejection of Uninsured/Under-
insured Motorists Coverage and Personal
Injury Protection Coverage while your
covered auto or any other motor vehicle
is operated by the excluded driver.

Even though the form 515 endorsement,
by its express terms, excludes the coverage
that Sims seeks, Sims argues that form 515
improperly attempts to narrow the cover-
age afforded an insured to less than that
provided for by Tex.Ins.Code Ann. arts.
5.06–1 and 5.06–3 (Vernon 1981). The rele-
vant portions of these two statutes read as
follows:

Art. 5.06–1. Uninsured or Underinsured
Motorist Coverage

(1) No automobile liability insurance . . .
covering liability arising out of the own-
ership, maintenance, or use of any motor
vehicle shall be delivered or issued for
delivery in this state unless coverage is
provided therein or supplemental thereto
. . . for the protection of persons insured
thereunder who are legally entitled to
recover damages from owners or opera-
tors of uninsured or underinsured motor
vehicles because of bodily injury, sick-
ness, or disease, including death, or prop-
erty damage resulting therefrom. *The
coverages required under this Article
shall not be applicable where any in-
sured named in the policy shall reject
the coverage in writing;* provided, un-
less the named insured thereafter re-
quests such coverage in writing, such
coverage need not be provided in or sup-
plemental to a renewal policy where the
named insured has rejected the coverage
in connection with a policy previously
issued to him by the same insurer or by
an affiliated insurer.

\* \* \* \* \* \*

Art. 5.06–3. Personal Injury Protection
Coverage

(a) No automobile liability insurance poli-
cy . . . covering liability arising out of the
ownership, maintenance, or use of any
motor vehicle shall be delivered or issued
for delivery in this state unless personal
injury protection coverage is provided
therein or supplemental thereto. *The
coverage required by this article shall
not be applicable if any insured named
in the policy shall reject the coverage in
writing;* provided that unless the named
insured thereafter requests such cover-
age in writing, such coverage need not
be provided in or supplemental to a re-
newal policy where the named insured
has rejected the coverage in connection
with a policy previously issued to him by
the same insurer or by an affiliated in-
surer.

\* \* \* \* \* \*

(e) An insurer shall exclude benefits to
any insured, or his personal representa-
tive, under a policy required by Section 1,
when the insured's conduct contributed
to the injury he sustained in any of the
following ways:

(1) Causing injury to himself intentional-
ly.

(2) While in the commission of a felony,
or while seeking to elude lawful appre-
hension or arrest by a law enforcement
official.

(Emphasis added.)

With regard to the P.I.P. coverage, Sims
argues that subsection (e) of 5.06–3 sets
forth the only exclusion of benefits autho-
rized by the statute, and that the attempt
of form 515 to add another exclusion, appli-
cable when the vehicle is being operated by
an unauthorized driver, is "repugnant to
the statute" and unenforceable. Sims re-
lies on *Unigard Sec. Ins. Co. v. Schaefer*,
572 S.W.2d 303, 307 (Tex.1978).

With regard to the uninsured/underin-
sured motorist coverage, Sims argues that,
even though there is no express exclusion
of benefits provision in art. 5.06–1 [1], form

---

**1.** There is no provision in art. 5.06–1 similar to    subsection (e) of art. 5.06–3.

515 attempts to limit the coverage that is *mandated* by art. 5.06–1, and is therefore not enforceable.

In *Unigard,* the involved policy forms and endorsements were substantially different from those involved in the present case. The "exclusion of named driver" form (form 119) involved in *Unigard* did not expressly state that the insured was rejecting P.I.P. coverage and uninsured/underinsured motorist coverage, but rather utilized only the general language that "the insurance afforded by this policy shall not apply with respect to any claim arising from accidents which occur while any automobile is being operated by (the excluded driver)." The supreme court held that form 119 was not effective as an exclusion of P.I.P. coverage, and stated that this holding was "consistent with that part of Article 5.06–3(e) which sets forth the only exclusion of benefits authorized by the statute." *Unigard,* 572 S.W.2d at 307. It is this portion of the opinion that contains the language upon which Sims relies; the court stated that any additional exclusion would be repugnant to the statute. *Id.*

However, the *Unigard* opinion goes on at length to discuss the need for an express rejection of P.I.P. coverage, in writing, for such a rejection to be effective:

[W]e do not agree with Unigard that 119 was sufficient as a partial rejection of the statutory Personal Injury Protection. As heretofore indicated, there is not a word in that endorsement which mentions Personal Injury Protection, Article 5.06–3 or Endorsement 243. A matter of public policy involving more than the present litigants is here involved. The Legislature has declared it to be the public policy of this State that "no automobile liability insurance policy ... shall be delivered or issued for delivery ... unless personal injury protection coverage is provided therein or supplemental thereto." Among the purposes are to provide injured occupants of the insured automobile with up to $2500 per person for hospital and doctor bills arising from accidents "without regard to fault or nonfault of the named insured or recipient...."

It is further stated that the coverage provided in this Article shall be applicable "unless the insured named in the policy rejects the coverage in writing...." We believe this calls for an express written rejection in language demonstrating that the insured has some knowledge of what he is rejecting. Because the provision of such mandated coverage is a matter of public policy, a claim of rejection thereof should not be determined simply by reference to the rules which courts otherwise apply to determine the intent and acts of contracting parties. Rejection of the coverage should not be on a "tantamount," "legal effect," or "consequence" basis. The manifest public policy requires that the "rejection in writing" of this particular statutory coverage be in clear and express language. There was no such rejection in the present case.

572 S.W.2d at 307–08.

The *Unigard* court also commented on the effectiveness of endorsement 119 as a partial rejection of uninsured motorists coverage, stating that P.I.P. coverage and uninsured motorists coverage is alike on the public policy aspects, and they both need clear and express rejection of coverage for exclusion to be effective. *Unigard,* 572 S.W.2d at 308.

The other cases cited by Sims in her brief are distinguishable. We hold that *Unigard,* as well as Tex.Ins.Code Ann. arts. 5.06–1 and 5.06–3 (Vernon 1981), authorize the exclusion of P.I.P. coverage and uninsured/underinsured motorists coverage when the rejection of such coverages is clearly expressed in writing, as it was here by the vehicle owner's signing of form 515.

Sims' point of error one is overruled.

■ In her second point of error, Sims contends that the trial court erred in entering summary judgment for Standard because there existed a genuine issue of material fact as to whether the form 515 was attached to the original policy and the renewal issued by Standard.

The standard for appellate review of a summary judgment for a defendant is

whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The movant has the burden to show that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Id.* Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex. 1984). A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, plaintiff could not succeed upon any theories pled. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983). Once the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth sufficient evidence to give rise to a fact issue to avoid a summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972).

In an affidavit attached to Standard's motion for summary judgment, Cheryl Smithee swore to the following:

1) she was an employee for Valentine Insurance Agency, Inc.;

2) in February of 1985, Bonnie Sue Jammer applied for personal automobile insurance at Valentine through The Standard Fire Insurance Company;

3) Valentine advised Jammer that in order for her to obtain a policy, she would have to sign a form 515 Exclusion of the Named Driver and Partial Rejection of Coverages which would exclude coverage while Kitty Sue Helm was operating the vehicle;

4) Jammer signed a form 515 endorsement;

5) Jammer agreed that the form 515 endorsement would serve as a rejection of uninsured/under-insured motorist coverage and personal injury protection while Kitty Sue Helm operated Jammer's covered automobile;

6) the form 515 endorsement formed a part of the original policy issued to Jammer, as well as a part of the renewal policy issued to her six months later; and

7) the form 515 endorsement attached to her affidavit was a true and correct copy of the form 515 that Jammer had signed.

Standard also attached the affidavit of Bonnie Sue Jammer to its motion for summary judgment, wherein Jammer stated:

1) that she understood at the time she applied for the insurance policy that the policy would be issued only if she signed a form 515;

2) the form 515 was issued to her at the time of her original policy;

3) the form 515 formed a part of her renewal policy;

4) as consideration for the initial issuance of the policy and the later renewal, she agreed that the form 515 would serve as a rejection of uninsured/under-insured motorist coverage and personal injury protection coverage while her covered auto was operated by Kitty Sue Helm; and

5) the form 515 endorsement attached to her affidavit was a true and correct copy of the form 515 she had signed.

Standard also attached the affidavit of its employee, Karen DePaul, to its motion for summary judgment. In her affidavit, DePaul stated:

1) the policy, attached to her affidavit as exhibit "C", was in effect from February 15, 1985 through August 15, 1985;

2) the renewal policy, attached to her affidavit as exhibit "D", was in effect from August 15, 1985 through February 15, 1986; and

3) both the original policy and the renewal carried the form 515 endorsement.

We note that the original application for insurance signed by Bonnie Jammer indicates that the policy was to include a form 515 exclusion for Kitty Sue Helm.

The deposition of William Valentine was relied upon and referred to by both parties

in connection with the motions for summary judgment and the responses thereto. Mr. Valentine testified that his agency acted as an agent for Standard Fire Insurance Company, and had authority to issue policies and to bind the insurance company. Mr. Valentine testified that the policy would not have been issued in the absence of an endorsement excluding Kitty Sue Helm as a driver of the insured vehicle. Kitty Sue Helm was under 20 years old, and had at least one speeding ticket on her record at the time. He testified that, in the usual course of his business in issuing this type of policy, he would have received the original policy from the insurance company, and his agency would have attached the signed form 515 endorsement to the policy before sending it to the insured on March 25, 1985. He stated that when the policy was mailed to the insured, it listed all endorsements that were signed and attached to it, including the form 515 endorsement. Mr. Valentine insisted that his agency would never send a policy to a customer without having the signed endorsement in hand.

Sims attempts to raise a fact issue solely by pointing to some conflicting testimony by Mr. Valentine. Early in his deposition, in response to questions by Sims' counsel, Mr. Valentine testified that the insurance company "apparently" did not have the signed form 515 endorsement at the time the policy was issued on March 25, 1985. There was some initial confusion about the date the signed endorsement was received at the agency from the insured. Mr. Valentine initially stated that the endorsement was mailed to the insurance company on April 3, 1985, which was "ostensibly" the same date it was received from the insured. Mr. Valentine also testified that he did not know the specific date the endorsement was signed by the insured.

Although Mr. Valentine was not sure when the signed endorsement was received from Bonnie Jammer, his concluding testimony, after he had fully reviewed his file, was that he was sure that the signed form 515 was attached to the original policy when it was mailed to Ms. Jammer.

We have reviewed all of the summary judgment evidence, and we find there is no fact issue about whether form 515 was attached to the original policy. We note that, pursuant to Tex.Ins.Code.Ann. arts. 5.06–1(a) and 5.06–3(a), it was not necessary to attach form 515 to the renewal policy.

Further, although all endorsements agreed to by the contracting parties should be attached to insurance policies, the failure to attach them does not invalidate them. *Fidelity Union Life Ins. Co. v. Methven,* 162 Tex. 323, 328, 346 S.W.2d 797, 800 (1961); *Travelers Indem. Co. v. Columbus State Bank,* 442 S.W.2d 479, 482 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ).

Sims' point of error two is overruled.

The judgment is affirmed.