Carlotta ORTIZ and Mario Zepeda, Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. 04–96–00248–CV.

Court of Appeals of Texas, San Antonio.

Sept. 10, 1997.

Rehearing Overruled Oct. 20, 1997.

Steven A. Sinkin, Law Offices of Sinkin & Barretto, San Antonio, Larry Zinn, San Antonio, for Appellants.

Gerald L. Shiely, Edward C. Mainz, Jr., Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, Dean V. Fleming, Fulbright & Jaworski, L.L.P., San Antonio, for Appellee.

Before STONE, GREEN and DUNCAN, JJ.

## OPINION

GREEN, Justice.

This case involves the written rejection exception to articles 5.06–1 and 5.06–3 of the Texas Insurance Code—the statutory provisions governing uninsured motorist, underinsured motorist, and personal injury protection coverage. Carlotta Ortiz and Mario Zepeda appeal the trial court's grant of a summary judgment in favor of State Farm Mutual Automobile Insurance Company on its declaratory judgment action and the denial of their own motion for summary judgment. In four points of error, appellants complain the Texas Automobile Insurance Plan's "Application for Automobile Liability Insurance" does not constitute a valid rejection of uninsured motorist, underinsured motorist, and personal injury protection as a matter of law. In counterpoints, State Farm complains the trial court erred in admitting incompetent summary judgment evidence. We affirm.

### Facts

Carlotta Ortiz and Mario Zepeda applied for auto insurance through the Texas Automobile Insurance Plan (TAIP) on March 6, 1991 and September 20, 1991, respectively. The TAIP application offered appellants uninsured and underinsured motorists coverage (UM/UIM) and personal injury protection coverage (PIP) and cited to articles 5.06–1 and 5.06–3 of the Texas Insurance Code. The application required appellants to either accept or reject these coverages individually by placing a check mark next to either "accept" or "reject". Ortiz and Zepeda both rejected UM/UIM coverage and Zepeda also rejected PIP coverage; Ortiz did not reject PIP coverage. At the bottom of their respective applications, Ortiz and Zepeda signed their names. Below the signature line for applicants, the servicing agent signed, indicating that he had explained the UM/UIM and PIP coverage to appellants. Appellants' applications were subsequently assigned to State Farm Mutual Automobile Insurance Company (State Farm), which issued policies consistent with the applications. Ortiz and Zepeda sued State Farm after being injured in two separate automobile accidents, each involving uninsured motorists.

At trial, appellants moved for partial summary judgment, seeking a declaratory judgment on the basis that the TAIP application cannot serve as a valid rejection of UM/UIM or PIP coverage, "[t]he application is not a knowing rejection" of PIP and UM/UIM coverage, "[t]he application is not a clear and express rejection" of PIP and UM/UIM coverage, and therefore, as a matter of law, State Farm is required to provide PIP and UM/UIM coverage.

State Farm likewise moved for a partial summary judgment, arguing that because the application complies with the Insurance Code, it constitutes a valid rejection of PIP and UM/UIM coverage and therefore, as a matter of law, State Farm is not required to provide PIP and UM/UIM coverage where it was rejected in the application.

The court denied appellants' motion for summary judgment and granted State Farm's motion

> to the extent that the Court concludes the Application for Automobile Liability Insurance in use by the Texas Automobile Insurance Plan, Form TAIP–1000, Rev. 10–1–89, which was submitted to the Texas Automobile Insurance Plan by the Plaintiffs, Carlotta Ortiz and Mario Zepeda, complies with the requirements of Articles 5.06–1 and 5.06–3 of the Texas Insurance Code in providing for written rejection of Uninsured/Underinsured Motorist Coverage and Personal Injury Protection Coverage.

The court then severed the partial summary judgment from the rest of the case and Ortiz and Zepeda appealed from the final judgment.

### Discussion

We review a summary judgment *de novo.* To prevail on summary judgment, the movant must show there are no genuine issues of material fact and he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Property Management, Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue

exists, the court considers all evidence favorable to the nonmovant as true and resolves every reasonable inference in favor of the nonmovant. *Cathey*, 900 S.W.2d at 341; *Nixon*, 690 S.W.2d at 548–49. A plaintiff, as movant, must conclusively prove all essential elements of his claim to be entitled to summary judgment. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). Conversely, if the defendant moves for summary judgment, he must negate at least one element of the plaintiff's cause of action or conclusively establish an affirmative defense. *Cathey*, 900 S.W.2d at 341. When both parties move for summary judgment, the court considers all of the evidence accompanying both motions in determining whether to grant either party's motion. *Villarreal v. Laredo Nat'l Bank*, 677 S.W.2d 600, 605 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

■ Appellants complain, in their first and second points of error, that the trial court erred in granting summary judgment for State Farm and in denying appellants' motion for summary judgment. In related points three and four, appellants argue that because the application was not a part of the liability policy and because the application is not a clear, knowing, and express rejection of UM/UIM and PIP coverage, it cannot govern the contractual rights of the parties in construing coverage. Because they are interrelated, we discuss these points together.

■ Texas Insurance Code articles 5.06–1 and 5.06–3 require that every automobile liability insurance policy issued within this state, including insurance issued pursuant to an assigned risk plan, provide UM, UIM, and PIP coverage, unless "any insured named in the policy shall reject the coverage in writing...." TEX. INS.CODE ANN. arts. 5.06–1(1), 5.06–3(a) (Vernon 1981).[1] The underlying policy behind these statutes is the state's interest in protecting conscientious and thoughtful motorists from financial loss. *See Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 382 (Tex.1989); *Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 308 (Tex.1978); *Employers Casualty Co. v. Sloan*, 565 S.W.2d 580, 584 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.).

■ Courts must liberally construe articles 5.06–1 and 5.06–3 to give full effect to the public policy broadly requiring UM/UIM and PIP coverage. *See Stracener*, 777 S.W.2d at 382; *Howard v. INA County Mutual Ins. Co.*, 933 S.W.2d 212, 218 (Tex. App.—Dallas 1996, n.w.h.); *Sloan*, 565 S.W.2d at 583. Because of the remedial purpose behind each article and because of the liberal interpretation effecting coverage, the

---

1. Specifically, article 5.06–1(1) states:

No automobile liability insurance (including insurance issued pursuant to an Assigned Risk Plan established under authority of Section 35 of the Texas Motor Vehicle Safety–Responsibility Act), covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in at least the limits described in the Texas Motor Vehicle Safety–Responsibility Act, under provisions prescribed by the Board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom. The coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage in writing; provided that unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer.

TEX. INS.CODE ANN. art. 5.06–1(1) (Vernon 1981). Article 5.06–3 (a) provides, in pertinent part: No automobile liability insurance policy, including insurance issued pursuant to an assigned risk plan established under authority of Section 35 of the Texas Motor Vehicle Safety–Responsibility Act, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless personal injury protection coverage is provided therein or supplemental thereto. The coverage required by this article shall not be applicable if any insured named in the policy shall reject the coverage in writing; provided, unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy if the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer.

TEX. INS.CODE ANN. art. 5.06–3(a) (Vernon 1981).

written rejection exceptions should be strictly construed to protect the insured. *See Howard,* 933 S.W.2d at 218; *Sloan,* 565 S.W.2d at 583; *Guarantee Ins. Co. of Texas v. Boggs,* 527 S.W.2d 265, 268 (Tex.Civ. App.—Amarillo 1975, writ dism'd). Thus, absent a written rejection, UM/UIM and PIP coverage exist as a matter of law. *See Howard,* 933 S.W.2d at 218; *Geisler v. Mid–Century Ins. Co.,* 712 S.W.2d 184, 187 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Sloan,* 565 S.W.2d at 583; *Boggs,* 527 S.W.2d at 268–69.

■ Although a rejection is required to be in writing, the statutes do not require a special procedure or special language for the writing.[2] *See Howard,* 933 S.W.2d at 218. Execution of a satisfactory written rejection requires only minimal effort by the insured. *Id.; see Sloan,* 565 S.W.2d at 585. Appellants contend that because their written rejections were not attached to or incorporated in their respective insurance policies, the rejections in the applications are not valid. In support of their contention, appellants recite language in the application stating, "THIS APPLICATION DOES NOT CONSTITUTE A BINDER OF INSURANCE." In essence, appellants ask us to interpret the written rejection language in articles 5.06–1 and 5.06–3 as requiring that the writing be attached to or in some other way incorporated in the policy.

■ This court will not insert additional words into a statute unless it is necessary to give effect to clear legislative intent. *See Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 552 (Tex.1981); *H & C Communications, Inc. v. Reed's Food Int'l, Inc.,* 887 S.W.2d 475, 479 (Tex.App.—San Antonio 1994, no writ). Every word excluded from a statute must be presumed to have been excluded for a reason. *Morrison v. Chan,* 699

S.W.2d 205, 208 (Tex.1985); *Kerrville HRH, Inc. v. City of Kerrville,* 803 S.W.2d 377, 382 (Tex.App.—San Antonio 1990, writ denied). A fundamental rule of statutory construction requires the court to ascertain the intent of the legislature "as expressed in the language of that statute." *State v. Terrell,* 588 S.W.2d 784, 786 (Tex.1979); *Gonzalez v. CIGNA Ins. Co. of Tex.,* 924 S.W.2d 183, 186 (Tex.App.—San Antonio 1996, writ denied). Unless a statute is ambiguous, we must follow the clear language of the statute. *RepublicBank Dallas v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985); *Gonzalez,* 924 S.W.2d at 186. The Texas Supreme Court has noted that:

[c]ourts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all its terms. But they must find its intent in its language and not elsewhere.... They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*RepublicBank Dallas,* 691 S.W.2d at 607 (quoting *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66 (1920)); *Gonzalez,* 924 S.W.2d at 186.

The Texas Insurance Code does not specifically require that an insured's rejection of UM/UIM or PIP coverage be attached to or incorporated in the policy. Instead, articles 5.06–1 and 5.06–3 only require the rejection of coverage to be in writing. Adding language to these unambiguous provisions by specifying the procedures to effectuate a

---

**2.** Unlike Texas, other states have mandated specific procedures to validate the written rejection. *See, e.g.,* La.Rev.Stat. Ann. § 22:1406(D)(1)(a)(ii) (West 1995) (stating signed form purporting to reject coverage "shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto"); Tenn.Code Ann. § 56–7–1201(a)(2) (1996) (declaring written rejection "shall be conclusively presumed to become a part of the policy or contract when issued or delivered, irrespective of whether physically attached thereto"); *see also Romero v. Dairyland Ins. Co.,* 111 N.M. 154, 156, 803 P.2d 243, 245 (1990) (noting insurance regulation mandates that rejection be attached to policy or otherwise made part of policy to be effective) (citing Regulations of the New Mexico Department of Insurance, Art. 5, Part 4, Ch. 66, Rule 1, § 5–1–4).

written rejection would unnecessarily intrude upon the province of the legislature.

Appellants cite *Employers Casualty Co. v. Sloan,* 565 S.W.2d 580 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.) for the proposition that a written rejection of coverage in an application for insurance is non-binding when it is not incorporated into the insurance policy. We disagree with their interpretation of *Sloan.* In *Sloan,* the court of appeals held invalid an *oral* rejection of UM/UIM coverage. *Sloan,* 565 S.W.2d at 583. Although the court mentioned Sloan's application in passing, it did not discuss whether a rejection in an application meets the statutory requirements. Therefore, we find *Sloan* inapplicable to the present issue.

The dissent also asserts that the written rejection of UM/UIM and PIP coverage must be incorporated into the policy to be effective, on the principle that insurance policies are to be construed in accordance with rules applicable to contracts generally. *See National Union Fire Ins. Co. v. CBI Industries,* 907 S.W.2d 517, 520 (Tex.1995). Specifically, the dissent argues that policy benefits must be determined exclusively from within the four corners of the policy, absent any ambiguity, without reliance on extraneous evidence. *Id.* The dissent cites *Fredonia State Bank v. General American Life Ins. Co.,* 881 S.W.2d 279 (Tex.1994) to support its conclusion that the written rejection of coverage was ineffective because the insurance application containing the rejection was not incorporated into the policy.

The dissent's reliance on *Fredonia* is misplaced. In that case, the supreme court was asked to determine whether an insurer may assert a misrepresentation defense for statements made in an insurance application that was not attached to the life insurance policy. The court held that because article 21.35 of the Texas Insurance Code required all *life* insurance contracts to be accompanied by the insurance application, evidence contained in the application could not be relied on by the insurer in seeking to avoid coverage. TEX. INS.CODE art. 21.35 (Supp.1997). In the absence of a similar statute requiring the insurance application to be attached to or incorporated into all automobile insurance policies,

*Fredonia* does not support the dissent's assertion that appellants' rejection of UM/UIM and PIP coverage in their insurance applications cannot be relied on by State Farm to avoid coverage.

Moreover, it should be pointed out that the use of extraneous evidence to reject coverage under these circumstances does not conflict with general rules of contract construction. As the dissent notes, the insurance policies in question consist of the declarations page, any endorsements listed therein, and the policy booklet. The declarations pages of the policies omit any premium charge for the rejected coverages. Consequently, under the specific terms of the policies, appellants did not contract for coverage for those types of claims. The UM/UIM and PIP coverage would only be imposed on the policy by law, outside the four corners of the contract, if it was not expressly rejected in writing. The rules of contract construction, therefore, do not apply here. The extra-contractual written rejections merely avoided the legal imposition of the unwanted coverage—Ortiz and Zepeda both rejected UM/UIM and Zepeda also rejected PIP. Because Ortiz did not reject PIP, she was entitled to that benefit by operation of law, whether or not she paid for it.

Based upon our interpretation of the statutes, we hold that the written rejections executed by appellants did not need to be attached to or incorporated into the policy to be valid. Because State Farm brought forward evidence showing appellants rejected the coverages in writing, State Farm established that it was not required to provide the rejected UM/UIM and PIP coverages.

Appellants also assert that even if a written rejection can be valid without being attached to or incorporated in the policy, the rejections in this case are invalid because they were not made knowingly and are not in clear and express language. The manifest public policy behind articles 5.06–1 and 5.06–3 requires that written rejections be written in clear and express language, demonstrating that the insured has some knowledge of what he is rejecting. *Schaefer,* 572 S.W.2d at 308. In *Schaefer,* the insured executed an "Exclusion of Named Driver"

endorsement, which excluded claims arising from any accidents occurring while his son operated the automobile. *Id.* at 306. Unigard Security Insurance Company contended this endorsement constituted a rejection of PIP coverage, in compliance with article 5.06–3 of the Insurance Code. *Id.* The supreme court held that the "Exclusion of Named Driver" form was not a valid rejection of PIP coverage in the absence of any specific reference to the coverage or article 5.06–3. *Id.* at 307–08. The court also indicated that because of the similarities between articles 5.06–1 and 5.06–3, the same language requirements would apply to UM/UIM coverage. *See id.* at 308.

Citing *Schaefer*, appellants assert that because the rejection language used in the TAIP application did not detail the nature of UM/UIM and PIP coverages, the rejection was not clear, and consequently, they did not know what they were rejecting. However, *Schaefer* does not stand for the proposition that a detailed explanation of UM/UIM and PIP coverages is necessary. In fact, *Schaefer* suggests that a written rejection is sufficient when it refers to UM/UIM and PIP coverage and cites to articles 5.06–1 and 5.06–3 of the Insurance Code. *See id.* at 307–08. Additionally, the First Court of Appeals has held that an endorsement stating, "You further agree that this endorsement will also serve as a rejection of Uninsured/Underinsured Motorists Coverage and Personal Injury Protection Coverage ..." constitutes a clear and express rejection. *Sims v. Standard Fire Ins. Co.,* 781 S.W.2d 328, 330–31 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Here, like the rejections in *Sims,* the rejection in the TAIP application reads, "UNINSURED/UNDERINSURED MOTORIST COVERAGE has been offered pursuant to Art. 5.06–1 Texas Insurance Code. I reject Uninsured/Underinsured Motorist Coverage in its entirety. I reject Property Damage Uninsured/Underinsured Motorist Coverage." The other rejection states, "PERSONAL INJURY PROTECTION COVERAGE has been offered pursuant to Art. 5.06–3 Texas Insurance Code. I reject." These rejections are in clear and express language. Moreover, the agent indicated on the form that he explained the nature of the coverage to the applicants.

Appellants further contend that the TAIP application did not constitute a valid written rejection since it did not require a signature next to the checkmark where appellants indicated their rejection. Absent a signature, appellants argue, the rejection was merely oral. We disagree. Though the application in question did not provide for a signature at the point of rejection, it did require the applicant to sign at the bottom of the form, which was on the same page as their rejection of coverage. We hold that the TAIP application contains clear and express language, demonstrating appellants knew what they were rejecting.

Finally, appellants argue they are entitled to coverage as a matter of law because the TAIP application did not "offer" UM/UIM and PIP coverage, as required by statute. However, appellants did not raise this issue in the trial court. Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 676–78 (Tex.1979). Since appellants did not raise this issue in their motion for summary judgment or any other response, we will not consider it on appeal as grounds for reversal.

Because the rejections contained in the applications meet the statutory requirements, the court did not err in granting State Farm's motion for summary judgment and in denying appellants' motion. We overrule appellants' points of error. In light of our holding, we do not address State Farm's counterpoints.

The judgment of the trial court is affirmed.

STONE, Justice, dissenting.

I respectfully dissent. While the majority opinion correctly states that the statutory provisions governing uninsured/underinsured motorist coverage and the case law liberally construing these statutes, the opinion does not adhere to the basic premise underlying all insurance matters—insurance policies are simply contracts, and are to be construed

accordingly to fundamental rules of contract construction. In the instant case, application of fundamental rules of contract construction lead to the conclusion that appellants do have uninsured/underinsured motorists coverage (UM/UIM).

At the time that appellants applied for insurance, State Farm used a separate form for applicants to select or reject UM/UIM coverage. The form provided information regarding such coverage, and incorporated the written rejection into the policy with language that the insured acknowledged that the "coverage selection or rejection shall be applicable to the policy insurance for which I am applying...." However, appellants were never given this form to sign. Rather, each appellant was given a TAIP application, and it is this "rejection" of UM/UIM coverage found in the TAIP application that State Farm relies upon in claiming appellants rejected coverage.

State Farm's reliance on the TAIP application as a rejection of UM/UIM coverage is misplaced for the simple reason that the TAIP application was never made part of the insurance policies issued to appellants. The application states in large bold type: **"THIS APPLICATION DOES NOT CONSTITUTE A BINDER OF INSURANCE."** Likewise, the insurance policies do not incorporate the TAIP application. The policy specifically consists of "the Declarations page, any endorsements listed therein, and the policy booklet specified under the Policy Form Number shown." A written rejection is not contained in any of these items. Thus, State Farm erroneously relies upon a document that is not part of the insurance policy to determine the contractual rights of the parties.

The provisions of an insurance contract define the rights of the insured and the insurer. *State Farm Fire & Casualty Co. v. Griffin*, 888 S.W.2d 150, 156 (Tex.App.–Houston [1st Dist.] 1994, no writ). In determining the intent of the parties to a contract the court is guided by the four corners of the contract, absent any allegations of ambiguity. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Unless the application is incorporated into the policy, it is not part of the policy and is not used in determining the rights of the parties under the policy. *Fredonia State Bank v. General American Life Ins. Co.*, 881 S.W.2d 279, 287–88 (Tex. 1994). Thus, statements made in the application cannot be used by the insurer to avoid coverage unless the application has been incorporated into the policy. *Id.* at 288.

As recognized by the majority, the Insurance Code requires that every Texas automobile liability insurance policy contain UM/UIM coverage unless the insured "shall reject the coverage in writing." TEX. INS. CODE ANN. arts. 5.06–1(1), 5.06–3(a)(Vernon 1981); *Stracener v. USAA*, 777 S.W.2d 378, 381 (Tex. 1989). Applying the general rules of contract construction, there is no written rejection of coverage within the issued policy. Therefore, I would hold that UM/UIM coverage is provided pursuant to TEX. INS. CODE ANN. arts. 5.06–1(1), 5.06–3(a)(Vernon 1981).